TEXAS & PACIFIC RAILWAY COMPANY V. KATE JOHNSON ET AL.

Decided December 10, 1907.

**1.—Negligence—Active or Passive—Definition.**

In a suit for damages for personal injuries, a charge that "by the term contributory negligence is meant some act of negligence, etc.," was not erroneous in that it limited the definition of contributory negligence to some *act* of negligence and did not include any omission or failure to act which may have contributed to the injury.

**2.—Charge—Omission of Word.**

The omission of the word "care" in the following charge, "And you further find from the evidence that at the time of his injuries the deceased was himself in the actual exercise of ordinary for his safety, etc.," held, a mere clerical error, easily supplied by the jury and therefore harmless.

**3.—Measure of Damage—Charge.**

In a suit by a wife and mother for the death of the husband and son, a charge on the measure of damage that the jury should allow "such a sum of money now as you shall believe from the evidence would compensate them, etc.," held, equivalent to a charge to allow "such a sum of money as paid now" would compensate them, etc.

**4.—Same.**

While it is true that for the death of a relative plaintiff should only be awarded such sum as would *reasonably* compensate him for his pecuniary loss, an instruction that the plaintiff was entitled to damages for "such pecuniary loss as resulted to him by reason of the death, etc.," was not a positive misstatement of the law, and in the absence of a requested instruction more precisely informing the jury as to the rule, was not reversible error.

**5.—Charge—Omission of Word.**

The omission of the word "person" in the following charge, "So if the jury shall believe that an ordinarily prudent discharging the duties of hostler, etc.," held harmless error.

**6.—Assumed Risk—Statute—Charge.**

In a charge upon assumed risk, the use of the expression "ordinarily prudent person" held synonymous with the expression "person of ordinary care" used in the statute.

**7.—Known Danger—Degree of Care—Charge.**

A requested instruction to the effect that "the degree of care which

an ordinarily prudent person should exercise should be commensurate with the dangers, known or obvious to him," is not technically correct and was properly refused. The degree of care one is required to use to protect himself is the same whether the danger be known or unknown. In either case ordinary care is the measure of duty.

**8.—Death—Verdict not Excessive.**

In a suit by a wife and mother for the death of the husband and. son, a verdict for $14,000 can not be held excessive where the deceased was thirty-one years of age, earning $80 per month with fair prospects of promotion; where the wife was twenty-eight years old and the mother was seventy-two years old and both were entirely dependent on the deceased for their support.

**9.—Verdict—Apportionment of Damages.**

When the verdict as a whole is not excessive the defendant can not complain .of the manner in which it is apportioned among the plaintiffs.

**10.—Death—Damages—Basis for Estimate.**

In a suit for pecuniary loss occasioned by the death of another the plaintiff is not required to prove any definite amount of contributions received from the deceased. It is sufficient to show what the earnings of the deceased were; what portion of these were expended for plaintiff, and that the contributions would probably have continued.

**11.—Master and Servant—Unsafe Place to Work—Contributory Negligence.**

In a suit for damages for the death of a "hostler" killed by coming in contact with a post too near the engine being operated by him, evidence considered, and held to show that the deceased was not guilty of negligence, but that the master was guilty of negligence in failing to furnish the deceased a reasonably safe place in which to work.

**12.—Contributory Negligence—Known Danger—Unmindfulness.**

A servant is not guilty of contributory negligence, as matter of law, merely because, while engrossed in his duties, he becomes temporarily unmindful of the known dangerous condition of the place in which he is working, which condition has been negligently maintained by the master.

Appeal from the District Court of Gregg County. Tried below before Hon. R. B. Levy.

*John M. Duncan* and *H. E. Lasseter,* for appellant.—A. H. Johnson may have been guilty of some omission, or failure to act, or exercise proper care for his own safety, which would have amounted to contributory negligence precluding a recovery for his death. Hence the court erred in limiting the definition of contributory negligence to "some act of negligence." Galveston City Ry. Co. v. Hewitt, 67 Texas, 478; McDonald v. International & G. N. Ry. Co., 86 Texas, 11; Weatherford, M. W. & N. W. Ry. v. Duncan, 10 Texas Civ. App., 484; Missouri, K. & T. Ry. v. Pfluger, 25 S. W. Rep., 792; Austin Rapid Transit Ry. Co. v. Cullen, 29 S. W. Rep., 257; International & G. N. Ry. Co. v. Garcia, 75 Texas, 591; Martin v. Texas & P. Ry. Co., 87 Texas, 121; International & G. N. Ry. Co. v. Anchonda, 75 S. W. Rep., 557.

The correct measure of damages in such cases as this is the value of such pecuniary aid or benefit as the plaintiffs might have reasonably expected to have received from the deceased had he lived, the same being such a sum of money, paid now, as would reasonably compensate the plaintiffs for their loss, hence the court erred in failing to give the

true measure of damages.  Ft. Worth & D. C. Ry. Co. v. Morrison, 93 Texas, 527; San Antonio Traction Co. v. White, 61 S. W. Rep., 706.

The charge was erroneous in that the true rule as to ordinary care in such cases is as to whether an ordinarily prudent person, in the exercise of ordinary care, would have remained in the employment of the company with knowledge of the danger.  Houston & T. C. Ry. Co. v. Smith, 52 Texas, 183; Galveston City Ry. v. Hewitt, 67 Texas, 478; Houston & T. C. Ry. v. Oram, 49 Texas, 346.

The court erred in refusing to give to the jury defendant's requested special charge No. 12, as follows: "You are further charged, as a part of the law of this case, that the degree of care which an ordinarily prudent person should exercise should be commensurate with the dangers known or obvious to him."  Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 621; Galveston, H. & S. A. Ry. Co. v. Matula, 79 Texas, 582; International & G. N. Ry. Co. v. Cocke, 64 Texas, 157.

The court should have granted the motion for a new trial, as made, upon the ground that the verdict of the jury was excessive in amount as a whole, and as to each plaintiff, the same being for a sum and sums largely in excess of what the proof showed to be the value, paid now, of any pecuniary benefit which the plaintiffs together, and each of them, might reasonably expect to have received from the deceased, had he lived.  Railway Co. v. Johnson, 1 Texas Civ. App., 103; Houston & T. C. Ry. Co. v. Crowser, 57 Texas, 293; International & G. N. Ry. Co. v. Ormond, 64 Texas, 485.

*McCord & Bulloch* and *Johnson & Edwards,* for appellees.

PLEASANTS, CHIEF JUSTICE.—This is a suit against the appellant brought by Mrs. Kate Johnson and Mrs. Mary R. Johnson, wife and mother of A. H. Johnson, to recover damages for the death of the latter, which, it is alleged, was caused by the negligence of the defendant.

At the time he was killed A. H. Johnson was in the service of appellant as hostler in the railroad yard maintained by appellant at Longview Junction.  Appellant maintained a round-house and repair shop in this yard, and there were a number of tracks running into said round-house, upon which engines were placed and operated while undergoing repairs or being prepared to go out on the road.  It was Johnson's duty to bring these engines into the round-house, or take them out, as occasion required, and to operate them when any movement thereof was necessary in effecting repairs.  The roof of the round-house was supported by columns placed on either side of the several tracks which entered said round-house.  These columns were placed so near the tracks that only about five inches of space was left between them and the frame of the cabs on the engines used on appellant's road.  At the time the round-house was built the engines used by appellant were much smaller than those in use at the present time  and at the time Johnson was killed, and under then existing conditions, the columns supporting the roof were far enough from the track to leave ample space for the operatives of the engines to perform their duties while on the engine, or in getting on and off, without coming in contact with

said columns. No change was made in the position of these columns after the change in the size of the engines and for that reason the round-house was not thereafter a reasonably safe place for the operatives of the engines moving therein to perform their work. This condition had existed several years prior to the accident which caused the death of the deceased and he knew of such condition and had warned other employes of the danger incident thereto. On the day of the accident one of appellant's engines was being repaired in said round-house and in the completion of said repairs it became necessary to move the engine back and forth over the track in order that the machinist working thereon might observe and mark any defective operation of its valves. At the time it became necessary to commence this movement of the engine Johnson was engaged in taking another engine out of the round-house and placing it on the track for use in taking out a train on appellant's road. In the absence of Johnson the foreman of the yard took charge of the engine which was being repaired, and in the capacity of engineer was operating it back and forth in the round-house so that the machinist who was making the repairs could observe the working of its valves. These movements were made slowly, and while they were going on Johnson, having taken the engine he was operating out of the yard, returned to the round-house and immediately got upon the engine which was being operated by the foreman as aforesaid. At the time he got upon it the engine was backing slowly. The foreman was at the throttle on the right hand side facing the front and operating the engine, and the machinist was on the ground on the left side of the engine and out of sight of the foreman marking the working of the valves. Johnson got upon the engine on what is called the gangway, which is between the cab and the tender. He got up on the right side and walked across to the other side and was seen leaning out a short distance looking towards the front at the machinist. While in this position and before he could be made to hear warnings attempted to be given him by other employes in the yard, his head was caught and crushed between the frame of the cab and one of the columns supporting the round-house, and the injuries thus received caused his death in a few minutes.

It was customary in moving engines in the round-house for the purpose of ascertaining the condition of their valves for the machinist who was making the observations and marking the effect of the valve motion to signal the engineer when to stop the engine and reverse its movement. This signal was given by motion of the hand or by vocal instruction. It was not necessary, however, for the proper performance of this work that the engine should be stopped at any precise point, all that was required being that sufficient revolutions of the wheels should be made each way, for the machinist to determine whether the valves worked properly in both the forward and backward movement of the engine. At the time the accident occurred and when the deceased got upon the engine, another engine was blowing off steam in the round-house a short distance from the engine upon which the accident occurred and the

foreman, who was operating said engine, could not have heard anything said to him by the machinist, and the latter, as before stated, was out of the foreman's view and therefore could not have signalled him when to stop or reverse the engine. The movement of the engine by which deceased was caught was the last movement necessary in testing the valves, but there is nothing to indicate that deceased knew this fact.

The defendant answered by general demurrer, general denial and pleas of contributory negligence and assumed risk.

The trial in the court below by a jury resulted in a verdict and judgment in favor of plaintiffs in the sum of $14,000, of which $10,500 was in favor of the widow, Mrs. Kate Johnson, and $3,500 in favor of Mrs. Mary Johnson, the mother of deceased.

From the foregoing statement of the facts we conclude that appellant was guilty of negligence in failing to use ordinary care to provide the deceased with a reasonably safe place in which to perform his work, and that the findings of the jury that the deceased was not guilty of contributory negligence and did not assume the risk caused by defendant's negligence, and that said negligence of defendant was the proximate cause of deceased's death, must be sustained.

The first assignment of error is as follows: "The court erred in that paragraph of its general charge to the jury as follows: 'By the term contributory negligence is meant some act of negligence on the part of A. H. Johnson, which, concurring with some negligence on the part of defendant company, caused or contributed to cause his injury and death;' in that it limits the definition of contributory negligence to some *act* of negligence on the part of Johnson, and does not include any omission or negligence of Johnson which may have consisted in an omission or failure to perform an act, duty or obligation incumbent upon him in the exercise of ordinary care." We do not think the term act of negligence as used in this paragraph of the charge could have been understood by the jury as only including some physical movement or action on the part of the deceased, but must have been understood to mean any failure, passive or active, on his part to exercise ordinary care for his safety. If, however, the term should be given the literal, restrictive meaning contended for by appellant it was not inapplicable to the facts of this case because the negligence charged against the deceased was his act in placing himself in such position as to cause his head to be caught between the supporting columns of the round-house and the cab of the engine. The evidence shows that he was caught in a few seconds or almost instantly after placing himself in this position, and speaking in a literal sense, if he was guilty of negligence such negligence consisted in the act of placing himself in such position.

The second assignment is as follows: "The court erred in the following part of its main charge to the jury: 'And you further find from the evidence that at the time of his injuries A. H. Johnson was himself in the actual exercise of ordinary for his safety and protection and without any fault on his part,' in that the word

'care' was omitted from this part of the charge, and it was thus calculated to mislead and confuse the jury." There is no merit in this assignment. The omission of the word care from this sentence of the charge was clearly a clerical error, and the word would necessarily have been supplied by the jury from reading the charge as a whole, and its omission in this place could not possibly have misled or confused them.

The third and fourth assignments complain of the charge on the ground that it failed to submit the proper measure of damage. The paragraph of the charge complained of under these assignments is as follows: "If the jury shall find for the plaintiffs and further find that the injury of A. H. Johnson proximately caused his death and that both plaintiffs were damaged thereby, then you are charged that you should award the plaintiffs such a sum of money now as you shall believe from the evidence would compensate them for the pecuniary loss, if any, which you will find from the evidence they have sustained." We do not think this charge is subject to the criticism made under the assignments. Probably it would have been more accurate to have said "such a sum of money as paid now," but the language used means the same thing. While it is true that only such sum could be awarded as would *reasonably* compensate plaintiffs for their pecuniary loss, the instruction that they were entitled to damages for "such pecuniary loss as resulted to them by reason of the death of A. H. Johnson," was not a misstatement of the law, and if the defendant desired that the jury be more fully informed as to the rule by which such loss should be ascertained it should have requested a special instruction giving such information.

The omission of the word person in the paragraph of the charge complained of under the fifth assignment was an immaterial error, as ordinary intelligence on the part of the jury would suggest from the context of the paragraph that such word should be supplied and we can not assume that the jury were lacking in such degree of intelligence.

The second objection to this charge is also untenable. The statute limiting the defense of assumed risk provides that such defense shall not be available "where a person of ordinary care would have continued in the service with knowledge of the defect and danger," from which the injury complained of resulted. In submitting this issue the court used the term "ordinarily prudent person." This is synonymous with the term "person of ordinary care" used in the statute. We think it was unnecessary in this connection to have further told the jury that the ordinarily prudent person mentioned in the charge must have been in the exercise of ordinary care in remaining in the service. Other portions of the charge instructed the jury that plaintiffs could not recover unless deceased was in the exercise of ordinary care at the time he received the injuries which resulted in his death, and in submitting the issue of assumed risk it was only necessary that the statute limiting this defense should be substantially followed, and this, we think, was done by the charge given.

The sixth assignment complains of the refusal of the court to give the following instruction requested by the defendant: "You are further charged as part of the · law of this case, that where an employee knows of the nature and character of a place in which he is called to work in the service of his master and the dangers incident thereto, if any, he could not in such case assume that the master had used ordinary care to furnish him a safe place in which to work." This charge was not applicable to any issue raised by the evidence and was not necessary in explaining or modifying any instruction given by the court and was therefore properly refused.

There was no error in refusing the special instruction requested by defendant upon the issue of contributory negligence, the refusal of which is complained of under the seventh assignment. That issue was sufficiently presented in the charge given by the court, and the requested instruction was therefore unnecessary and to have given it would probably have unduly emphasized the defense of contributory negligence.

It would not have been proper to instruct the jury that "the degree of care which an ordinarily prudent person should exercise should be commensurate with the dangers known or obvious to him." The proposition is not ˙ technically correct. The degree of care one is required to use to protect himself is the same whether the danger be known or unknown. In either case ordinary care, or the care that an ordinarily careful person would use under the same or similar circumstances, is the measure of duty. Of course in determining what is ordinary care in a particular case all of the surrounding circumstances must be considered, and what would be ordinary care under some circumstances would not be under others. All that it was necessary to inform the jury on this subject was contained in the charge given by the court, and the eighth assignment complaining of the refusal to give this instruction can not be sustained.

The requested charge, the refusal of which is complained of in the ninth assignment, was in effect a charge to find for the defendant on the issue of assumed risk, and was therefore properly refused.

The tenth, eleventh, twelfth and fifteenth assignments of error assail the verdict on the ground, that the amount of damages assessed by the jury is so excessive that it shows that they were influenced by passion, prejudice or some other improper motive, and also on the ground that there was no proof as to any specific sum which the deceased had contributed to either of the plaintiffs, nor any evidence from which the jury could approximate the sum which it could reasonably be expected he would have contributed in the future had his life been spared.

The evidence shows that deceased was 31 years old at the time he was killed and was earning $80 per month. He was in perfect health and was sober, capable and industrious, and expended all of his earnings for the support of his wife, mother and self. His wife was 28 years old at the time of his death with a life expectancy of 37.7 years. His mother was 72 years old and her life expectancy

was 7.5 years. The life expectancy of deceased was 34.6 years. He entered the service of appellant as a boy, and had been promoted from the position of caller and messenger boy through regular grades of the service to that of· hostler. He had always been careful and attentive to his duties. The only damages claimed in the petition is the loss of the contributions which deceased would have made to plaintiffs had ˙he lived, and there is no evidence of any specific amount of such contribution made by deceased in his lifetime. The evidence does show, however, that plaintiffs were entirely dependent upon him and that he supported and maintained them both. He had no children and no one else dependent upon him other than plaintiffs. He owned his home and, as before stated, all of his wages were appropriated to the support of himself and plaintiffs.

The petition alleges that plaintiffs, prior to the death of deceased, were receiving large contributions from his wages and would have continued to receive such contributions had he lived and "that he was regularly earning $80 per month, and if he had continued to live would have continued to receive that amount and greater wages."

Upon the evidence above set out we can not hold that a verdict for $14,000 in favor of plaintiffs is so excessive as to authorize this court to say that it was not the honest judgment of the jury as to the value of the pecuniary aid which plaintiffs might reasonably have expected to receive from the deceased had he lived, and we can not substitute our judgment upon this issue for that of the jury.

If we take the earnings of the deceased at the time of his death as a basis, at the present rates of interest, it can by a mathematical computation be demonstrated that the amount of the verdict paid now and placed at interest would produce a larger sum than it could be reasonably expected deceased would have contributed to plaintiffs during his life expectancy had he lived out the full time of such expectancy. But a calculation of this kind leaves out of consideration the element of an increase of earning capacity, an issue raised by the pleadings and evidence, and is also based on the assumption that the present rates of interest will continue the same, and therefore it is manifest that such calculation can not be held to be conclusive. The law has not fixed any definite rule by which damages of this kind should be computed, but has left it to the unbiased, unimpassioned judgment of a jury to say what the amount should be, and in the absence of anything in the record of a case to indicate that the· jury were improperly influenced, an appellate court can not substitute its judgment as to the proper amount of the verdict, for that of the jury, unless the amount found by the jury is so unreasonably excessive as in itself to justify the conclusion that they acted from improper motives in fixing said amount, and we can not so hold under the evidence in this case. East Line & R. R. Ry. Co. v. Smith, 65 Texas, 167; International & G. N. Ry. Co. v. Ormond, 64 Texas, 485; Ft. Worth & R. G. Ry. Co. v. Kime, 51 S. W. Rep., 559.

Appellant can not be heard to complain of the apportionment

made by the jury of the amount of the verdict between the respective plaintiffs. The amount of the verdict as a whole not being excessive it is no concern of appellant as to how it was apportioned between the plaintiffs. International & G. N. Ry. Co. v. Munn, 102 S. W. Rep., 442; Gulf, C. & S. F. Ry. Co. v. Johnson, 31 S. W. Rep., 259.

There is no rule which requires that a plaintiff suing for damages for the pecuniary loss occasioned by the death of another must show any specific or definite amount of contributions received from the deceased in his lifetime in order to recover for the loss of such contributions. It is sufficient, as in this case, to show what the earnings of the deceased were and that a large portion of these earnings were expended for plaintiff's support and maintenance. These facts, taken in connection with the evidence showing the relation of the parties to each other, and that it could be reasonably expected that the contributions made by deceased to plaintiffs would have continued, were sufficiently definite to authorize the jury to fix the amount of damages occasioned plaintiffs by the loss of such contributions.

The thirteenth and fourteenth assignments assail the verdict on the ground that it is without evidence to support it in that the undisputed evidence shows that the deceased at the time he was killed was not in the performance of any duty of his employment and not in the proper place for the discharge of such duty, and further shows that deceased was guilty of contributory negligence which was the proximate cause of his injury. Neither of these assignments can be sustained. The undisputed evidence shows that it was the duty of the deceased to operate all the engines operated in appellant's round-house. The engine upon which the accident occurred was being operated at the time of such accident by the foreman of the yard, but the foreman only took charge of the engine because of the fact that at the time it became necessary to move it the deceased was otherwise engaged. There is no suggestion in the evidence that it was not the duty of the deceased to place himself in position to immediately take charge of the engine when called upon by the foreman, and it is evident that the most convenient and appropriate position for him to take in order to be ready to promptly enter upon the discharge of the duties of his employment when occasion required, was upon his engine. It is not material that he was not in the active performance of any duty at the time he was killed. He was at the place of duty ready to begin work when called upon, and appellant owed him the duty of using ordinary care to keep such place reasonably safe, and if it failed in such duty was guilty of negligence. East L. & R. R. Ry. Co. v. Scott, 71 Texas, 703; St. Louis, A. & T. Ry. Co. v. Welch, 72 Texas, 302; Houston, E. & W. T. Ry. Co. v. McHale, 20 Texas Ct. Rep., 161.

It can not be held as a matter of law that deceased was guilty of negligence in taking the position he did upon the engine. The evidence shows that the place at which he was standing on the engine was not the safest place he could have taken, but aside from the

danger of being struck by the columns, of the proximity of which deceased was obviously unmindful, there is nothing in the evidence to justify the conclusion as a matter of law that his position was so unsafe that no one in the exercise of ordinary care would have taken such position on the engine. All of the evidence shows that just after getting to the left side of the gangway deceased leaned over and looked to the front to observe what the machinist was doing and immediately after putting himself in this position he was caught between the column of the round-house and the cab of the moving engine. It may be, as contended by appellees' counsel, that his purpose in leaning out of the gangway was to receive and transmit to the foreman any signal which the machinist might give, or it may be he only wanted to see what the machinist was doing and thus ascertain when the foreman would probably cease the operation of the engine and turn it over to him. In neither event can it be said that his act in leaning out of the gangway was so wanting in ordinary care that it should be held negligent as a matter of law.

It would be unreasonable and unjust to hold a servant guilty of contributory negligence as a matter of law merely because, while engrossed in the duties of his employment, he became temporarily unmindful of the known dangerous condition of the place in which he had to perform his work, which condition had been negligently maintained by the master.

This disposes of all of the assignments presented in appellant's brief. We think the case was properly tried and the judgment of the court below should be affirmed.

*Affirmed.*

Writ of error refused.