HOUSTON, E. & W. T. RY. CO. v. JACKMAN. (No. 498.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 21, 1919. Rehearing Denied Jan. 7, 1920.)

1. MASTER AND SERVANT ⬅88(4)—INJURY TO VOLUNTEER NOT ACTIONABLE.

A person, by merely volunteering his services to another, or by assisting the servants of another without authority to employ such assistance, cannot establish the relation of master and servant, and so establish liability for injuries under the principles of law governing master and servant.

2. MASTER AND SERVANT ⬅88(4)—STATION AGENT NOT INTERMEDDLER IN ASSISTING IN DELIVERY OF FREIGHT BY ANOTHER ROAD.

Station agent of one railroad, in the box car of another in discharge of his duty as agent of the first to check a shipment of iron being delivered to his railroad by the other, held not an intruder, meddler, stranger, or mere volunteer to the work of unloading the other railroad's car, in which he was injured when a colored brakeman of the other road let go of the heavy bundles of iron which they were holding up together.

3. MASTER AND SERVANT ⬅88(4)—INJURIES BY SERVANTS TO EMPLOYÉ OF OTHER RAILROAD PROPERLY IN CAR ACTIONABLE.

Where the station agent of one railroad rightfully entered the box car of another to discharge his duty as agent for the first, the servants of the other road could not negligently injure him without subjecting their company to liability, even if the agent was not the agent of such company in handling freight, and not a joint agent of the two roads.

4. TRIAL ⬅352(4)—REFUSAL OF ISSUE INVOLVING QUESTION NOT IN CONTROVERSY PROPER.

In an action by the station agent of one railroad against his employing road and another for injuries received in the car of the latter from a fall of heavy iron bundles he was steadying with the latter's brakeman, refusal of the trial court to submit the issue whether plaintiff volunteered his services in unloading freight held proper, on the ground that it would have confused, rather than assisted, the jury in determining any issue; it not being disputed by plaintiff that what he did was voluntary, in the sense that he was not requested to help.

5. TRIAL ⬅352(4)—REFUSAL OF SPECIAL ISSUE INVOLVING POINTS NOT IN CONTROVERSY PROPER.

In action by station agent of one railroad for injuries from the fall of heavy iron bundles he was assisting the brakeman of another road to hold up, where it was not contended by plaintiff that the weight of the iron or the mode of its placing constituted negligence which proximately caused his injuries, the trial court properly refused to submit the issue whether plaintiff knew the weight of the iron and the mode of the placing.

6. APPEAL AND ERROR ⬅1050(1)—ERROR IN ADMISSION OF OPINION TESTIMONY HARMLESS, IN VIEW OF FACTS DETAILED BY WITNESS.

In an action for injury by a railroad station agent against his employer and another road, whose servants he was helping when injured, admission of testimony of plaintiff that he was joint agent for all purposes of both roads held not prejudicial error, when supported by full and detailed testimony of the agent as to what he meant by joint agent, also detailing the services he performed.

7. MASTER AND SERVANT ⬅268—EVIDENCE TO ESTABLISH RELATION COMPETENT.

In a servant's action for injuries, his sworn evidence, adduced in open court on trial, that

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

he was the joint agent of both defendant railroads, was not prohibited by the rule making inadmissible the declarations of an agent outside of court to establish a claimed agency.

**8. APPEAL AND ERROR ⬅⇒1048(3)—LEADING QUESTIONS HARMLESS.**

In an action by the station agent of one railroad against such road and another, whose employés he was assisting in removing freight from a car when injured, action of the trial court in permitting leading and suggestive questions to be propounded to plaintiff by his counsel *held* harmless to the railroad whose servants plaintiff was helping when injured.

**9. DAMAGES ⬅⇒132(6)—$12,500 FOR BROKEN THIGH AND LEG NOT EXCESSIVE.**

Verdict for $12,500, in favor of station agent of one railroad against another, whose employés he was assisting in handling freight, for injuries consisting of a broken left thigh and broken right leg, which confined him to bed and subjected him to pain for some months, and impaired his powers of locomotion and earning capacity, though he later secured employment more remunerative than his former position, *held* not so manifestly excessive as to warrant setting aside.

**10. DAMAGES ⬅⇒166(1)—TESTIMONY AS TO SUFFERING FROM INJURY ADMISSIBLE ON DAMAGES.**

In an action for personal injuries sustained by the station agent of one railroad while assisting employés of another in handling freight, plaintiff's testimony as to the treatment he underwent and the pain and suffering caused thereby *held* admissible on the issue of damages.

**11. MASTER AND SERVANT ⬅⇒99—JOINT SERVANT'S JUDGMENT AGAINST SINGLE NEGLIGENT EMPLOYER PROPER.**

Where the joint station agent of two railroads was injured while helping the employés of the second road unload freight from a box car, through the negligence only of a brakeman of the second road, the first road was not liable for the injuries, and judgment in the agent's suit against both roads was properly rendered in his favor against the second only.

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Suit by M. Jackman against the Houston, East. & West Texas Railway Company and another. From judgment for plaintiff against the first-named defendant, it appeals. Affirmed.

E. B. Pickett, Jr., C. H. Cain, and P. C. Matthews, all of Liberty, for appellant.

McMeans, Garrison & Pollard and Stevens & Stevens, all of Houston, and F. J. & C. T. Duff, of Beaumont, for appellee.

HIGHTOWER, C. J. This was a suit by appellee, M. Jackman, against the Houston, East & West Texas Railway Company and the Gulf, Colorado & Santa Fé Railroad Company, filed in the district court of Liberty county, in which the plaintiff sought to recover damages in consequence of personal injuries alleged to have been sustained by him about the 21st of December, 1916. The substance of plaintiff's petition may be stated as follows:

He alleged that on the date of his injuries he was the joint agent of both defendants at a point where the roads of the two defendants intersect and cross each other, and known as Cleveland Junction, in Liberty county; that on said date the defendant Houston, East & West Texas Railway Company transported certain freight over its line, which was to be delivered to the defendant Gulf, Colorado & Santa Fé Railroad Company at said junction, and from there to be transported by the latter defendant to a point on its road; that this freight consisted, among other things, of eight bundles or packs of iron, said bundles or packs being each about five feet square, and each weighing about 500 pounds; that as such joint agent of said defendants at said station it was the duty of plaintiff to check said freight as it was being delivered from the Houston, East & West Texas Railway Company to the Gulf, Colorado & Santa Fé Railroad Company, which freight was in a box car of the Houston, East & West Texas Railway Company, and that for the purpose of making such check plaintiff, in the discharge of his duty, went into said box car and entered upon the performance of his duty as such agent in checking this iron; that after two bundles or packs of this iron had been taken out of the box car there remained six other bundles or packs of the iron, and that these packs or bundles were set up or stood up by the side of the car and inside thereof by the employés of the Houston, East & West Texas Railway Company, and that said bundles of iron, as they thus were placed, were leaning against the side of the car in an almost perpendicular position; that one George Massey, a negro brakeman in the employ of the Houston, East & West Texas Railway Company, was holding these six bundles of iron, or rather steadying them as they stood against the side of the car, and that while plaintiff was in the discharge of his duty there in checking and assisting in the delivery of said iron from the Houston, East & West Texas Railway Company to the Gulf, Colorado & Santa Fé Railroad Company, said brakeman, George Massey, without warning or notice to plaintiff, suddenly and negligently let loose or released his hold on said bundles of iron, and thereby let or caused said six bundles of iron to fall upon and against the plaintiff, seriously injuring him, the extent of such injuries being specifically stated.

The defendants filed a joint answer, consisting of a general demurrer, general denial, a plea of contributory negligence, and further specially pleaded that the plaintiff, at the time he was injured, was not in the.

discharge of any duty owed by him 'to either of said defendants, but was a mere volunteer at the time, and that neither of said defendants owed him any duty at said time, other than not to willfully or wantonly injure him; the contention of the defendants in this connection being that at the time plaintiff was injured he was assisting in the physical effort of unloading this iron from the box car, or at least was holding ·or assisting the employés of the Houston, East & West Texas Railway Company to hold said iron against the walls of said car at the time he was injured, and that it was no part of his duty, as agent for either of said defendants at said junction, to so participate or assist in the handling or delivery of freight from one of said companies to the other, but that his sole duty, as agent for the Gulf, Colorado & Santa Fé Railroad Company, was to check the iron that was being delivered to the Gulf, Colorado & Santa Fé Railroad Company from the Houston, East & West Texas Railway Company, which duties did not require plaintiff to assist in unloading or to do any physical act in connection with such checking. The Houston, East & West Texas Railway Company ·further alleged specifically that plaintiff was not the agent of that company for any purpose other than to sell tickets over its road, and that as to that company plaintiff was a mere volunteer in anything he did on the occasion in question with·reference to such freight.

At the conclusion of the evidence the case was submitted to a jury upon the following special .issues contained in the court's main charge:

Issue No. 1: "Did Brakeman George suddenly and without warning let loose the sheet of iron in said car, thereby causing the same to topple over and to fall to, upon, and against plaintiff, and throw him against the floor of said box car?"

To this issue the jury answered "Yes."

Issue No. 2: "Was such act, if any, on the part of Brakeman George, negligence on his part, under the definition thereof hereinabove given?"

To this issue the jury answered "Yes."

Issue No. 3: "Was such negligence, if any, on the part of Brakeman George, the proximate cause of plaintiff's injuries, if any?"

To this issue the jury answered "Yes."

Issue No. 4: "What amount of money paid now will fairly and justly compensate plaintiff for such damages, if any, as were the direct and proximate result of said negligence and injuries, if any, on the part of said Brakeman George?"

To this issue the jury answered "$12,500."

In addition to the above special issues contained in the court's main charge, the defendants jointly requested, and the court submitted upon their request, the following special issue:

Special Issue No. 9 (requested by defendants): "Was or was not the plaintiff, M. Jackman, at the time of the alleged injury, the joint agent of the Houston, East & West Texas Railway Company and the Gulf, Colorado & Santa Fé Railroad Company for the purpose of handling the freight while being unloaded from the cars of the Houston, East & West Texas Railway Company?"

To this issue, so requested by defendants, the jury answered "Yes."

Upon the return of the verdict by the jury, judgment was entered in favor of the plaintiff, Jackman, against the defendant Houston, East & West Texas Railway Company for the sum of $12,500, and judgment was entered in favor of the defendant Gulf, Colorado & Santa Fé Railroad Company, and plaintiff was not allowed to recover anything against that defendant.

From the judgment so entered, the Houston, East & West Texas Railway Company has appealed to this court, assigning a number of errors, and the plaintiff, Jackman, has also assigned error to the action of the trial court in refusing·to also enter judgment in his favor against the Gulf, Colorado & Santa Fé Railroad Company. For convenience, the Houston, East & West Texas Railway Company will hereinafter be referred to as appellant, and the plaintiff, Jackman, as appellee, and the defendant Gulf, Colorado & Santa Fé Railroad Company will be referred to as such.

·The first assignment of error found in appellant's brief is as follows:

"The defendant is entitled to a new trial, for the reason that the verdict of the jury is contrary'to' the law and the evidence, in that the undisputed evidence shows: (a) That the plaintiff was not the agent or representative of the defendant Houston, East & West Texas Railway Company in the performance of any service in handling freight while same was being loaded or unloaded into the cars of the Houston, East & West Texas, but was the agent of the Gulf, Colorado & Santa Fé Railway Company; (b) that his duties as agent for the Gulf, Colorado & Santa Fé Railway Company and as ticket agent·for the Houston, East & West Texas Railway Company did not require him to go into the car and assist in unloading and loading freight; (c) that in assisting the employés of the Houston, East & West Texas Railway Company in unloading freight he was a mere volunteer; that his duties did not require him to do so; that he was not performing any service that he was employed to perform; that he was not called upon by any agents or employés of the defendant to perform said service; nor was there any necessity for his assisting to unload said freight by reason of insufficient crews of help; but his act in helping, his act in attempting to hold said steel or iron against the walls of said car, was his own volunteer act, and being a mere volunteer, and assisting without the request of the Houston, East & West Texas, or any of its agents or representatives, and not being requested to do so in the performance of any duty that he owed to the Houston, East & West Texas, the defendant company was not liable for any negligent act of its servants in

unloading the freight, except to avoid willfully or wantonly injuring the plaintiff, he being a mere volunteer, which would preclude a recovery."

This assignment is submitted as a proposition within itself. In addition appellant makes the further propositions under this assignment:

(1) "A person who works for another of his own volition, without the knowledge or request of any one in authority, cannot thereby establish the relation of employer and employé, so as to base a claim for damages on the duty that an employer owes to an employé."

(2) "A person who volunteers to assist the servant of another, without being employed so to do by that other, is deemed to assume all the ordinary risk incident to the situation. His position is that of a volunteer, and is analogous to that of a trespasser or bare licensee. He takes things as he finds them, and in case of his being injured, unless the injury occurs under such circumstances as to create a liability if he was regarded as a trespasser, intruder. or bare licensee, he cannot recover damages from the master of the servant whom he has volunteered to assist."

(3) "Where an employé in one department is called from his duty by an employé in another department to assist him, when such other employé has no authority to direct him, and when no emergency exists, so as to imply the authority of such other to call him, or where an employé in one department voluntarily assists a servant in another department, and in performing the work he is injured, he assumes the risk incident to the situation, and no liability for his injury lies against his master."

(4) "The common-law defense of assumed risk is available to a common carrier while engaged in interstate commerce as against a servant injured upon a train or car devoted at the time to carrying interstate freight."

[1] As sustaining the first three additional propositions submitted under its first assignment of error as above mentioned, appellant cites 18 Ruling Case Law, § 84, p. 578; Thompson on Negligence, § 4680; 26 Cyc. pp. 1085, 1287; 29 Am. & Eng. Enc. of Law, p. 154. Appellant also cites as sustaining said propositions the following Texas authorities: Marshall & E. T. Ry. Co. v. Sirman, 153 S. W. 401; Werner v. Trautwein, 25 Tex. Civ. App. 608, 61 S. W. 447; M., K. & T. Ry. Co. v. Moore, 169 S. W. 916. Appellant also cites authorities from other states in support of these propositions. We shall not attempt to discuss the authorities cited by appellant to sustain these propositions, for the reason that in our opinion the propositions themselves announce, in the abstract, a correct rule of law, and they are fully sustained by the authorities cited by appellant. In other words, we concede it to be a sound and correct legal proposition that no person, by merely volunteering his services to another, or by assisting the servants of another without authority to employ or invoke such assistance, can establish the relation of master and serv-

ant or employer and employé, and thus establish liability against another for injuries sustained by such a volunteer under the principles of law governing master and servant or employer and employé. The question to be determined in this case, however, is whether upon the facts the appellee was a mere volunteer at the time he was injured, as contended by appellant. The facts touching this point may be briefly stated as follows:

In 1914 appellee was employed by the Gulf, Colorado & Santa Fé Railroad Company as its local agent at Cleveland Junction, and continued in its employ as such agent until the date of his injury. The track of the Gulf, Colorado & Santa Fé Railroad Company crosses the track of the Houston, East & West Texas Railway Company at the station or depot of the Gulf, Colorado & Santa Fé Railroad Company, where appellee was employed, which junction or crossing is between one-half and three-quarters of a mile north of the town of Cleveland proper, where the Houston, East & West Texas Railway Company has all the while had and maintained its own station and depot. We think the facts, without dispute, show that the compensation for services rendered by appellee as station agent under his employment was paid by the Gulf, Colorado & Santa Fé Railroad Company, and he was under the direction and control of that company as its agent at Cleveland Junction, but the Houston, East & West Texas Railway Company refunded to the Gulf, Colorado & Santa Fé Railroad Company about $10 a month of the compensation that was paid to appellee; the claim of the Houston, East & West Texas Railway Company being that this $10 was for services performed by appellee in the interest of that company in the sale of tickets over its road. It is undisputed that the Houston, East & West Texas Railway Company kept no agent or representative of any character at Cleveland Junction for the purpose of attending to its business in the handling of freight, yet the evidence shows that appellee frequently, and in fact almost daily, attended to the checking and handling of freight that came in over the line of the Gulf, Colorado & Santa Fé Railroad Company to be delivered to the Houston, East & West Texas Railway Company, and on some occasions checked and receipted for freight that was delivered by the public at such junction depot to be transported by the Houston, East & West Texas Railway Company over its own line. All receipts and waybills of this character were signed by appellee as agent, without stating for which road he acted in that capacity. When freight was being delivered by the Houston, East & West Texas Railway Company to the Gulf, Colorado & Santa Fé Railroad Company for transportation by the latter company over its line of road, the delivery was usually checked and handled by the conductor and brakeman of

the Houston, East & West Texas Railway Company in unloading such freight from the train of the Houston, East & West Texas Railway Company at said junction depot, and the conductor of the Houston, East & West Texas Railway Company and appellee would usually and customarily jointly check such freight so transferred and delivered to the Gulf, Colorado & Santa Fé Railroad Company; the purpose of this checking being on the part of the conductor and appellee to see that the Houston, East & West Texas Railway Company discharged its duty in delivering such freight, and on the part of appellee to see that the Gulf, Colorado & Santa Fé Railroad Company received such freight, and that such check should be correct and complete.

It is practically undisputed, also, that when freight was being delivered by the Houston, East & West Texas Railway Company, as was the shipment in question, appellee frequently went inside the car of the Houston, East & West Texas Railway Company from which the freight was being unloaded, and there checked the same, but that sometimes the checking was made after the freight had been placed on the platform at the junction, and sometimes, perhaps, after the freight had been placed in the warehouse or depot at the junction. And while appellant pleaded that appellee had no business in going into the car on the occasion in question to check this iron, and that he was not expected, and that his duties did not require him, to go inside of said car, but to check the same after it had been delivered on the platform at the junction, and that his act in going into the car made him a mere volunteer, still it is not seriously contended here by appellant that appellee was not rightfully in the box car at the time he received his injuries. The testimony further shows, we think without dispute, that appellee was not actually required, under his contract of employment with the Gulf, Colorado & Santa Fé Railroad Company, to participate in the physical act of lifting or handling, or physically assisting in lifting or handling, any freight; but it was his duty, under his contract, to make and keep a complete check of all freight delivered to and, passing through the station at said junction, and the evidence further shows that appellee very frequently during the time he was employed, as before stated, actually assisted physically the brakeman and conductors of both roads in handling and delivering freight at said station.

When the car of the Houston, East & West Texas Railway Company, which contained the shipment of iron in question, arrived at Cleveland Junction, appellee, with the conductor and two brakemen of the Houston, East & West Texas Railway Company, entered said car, the purpose of appellee being at the time to make his check of the freight in said car which was to be delivered to the Gulf, Colorado & Santa Fé Railroad Company at said station, and upon entering the car this check was being made by appellee, and two of the bundles or packs of iron had been taken from the car by the employés of the Houston, East & West Texas Railway Company, leaving six of said bundles remaining. Appellee testified that after two of the bundles of iron had been taken out of the car the crew that was unloading the car decided that it was necessary to move some other character of freight from the position it occupied in the car, so that a truck might be gotten into the car and this heavy iron placed upon it and removed to the platform at the station, and that some of the crew of the Houston, East & West Texas Railway Company were removing this other freight to give room for such truck, and that while this was going on the colored brakeman, George Massey, who was in the exclusive employ of the Houston, East & West Texas Railway Company, was standing on one side of these six bundles of iron which were placed against the side of the car in an almost perpendicular position, and that he (appellee) was on the other side of the six bundles of iron, and that at this time both he and said brakeman, George Massey, were steadying or holding said six bundles of iron thus placed against the wall in order to prevent it from falling, and until the truck might be brought in and the iron placed upon it; that all at once, and very suddenly, and without warning to him, while he was thus assisting to steady the iron against the wall, the brakeman, George Massey, turned loose or released his hold from this iron, and that thereupon the iron suddenly and rapidly swung around and fell or toppled over against and upon appellee, knocking him to the floor of the car, and that he was seriously injured.

Now, the real contention of appellant here is that the mere act of physical participation on the part of appellee in assisting to steady this heavy iron while it was leaning against the wall of the car made appellee, in contemplation of law, a mere volunteer, and that he was performing no duty required of him by either railroad company, but in contemplation of law was a mere intermeddler or intruder, and was a stranger to both defendants in this case.

' We forgot thus far to state, also, that the undisputed evidence shows that appellee was not requested, on the occasion in question, by any one of the train crew of appellant to assist physically in the unloading or handling of this iron, but appellee testified that it was necessary, or at least that he was assisting to the extent as stated, because this freight was very heavy and that really his services were required in the handling of it to the extent he did assist.

[2, 3] Now, the question is: Does it follow as a matter of law from these practically undisputed facts that appellee was a mere

volunteer at the time he sustained his injuries, in other words, that he was an intruder or intermeddler, and had no connection in his capacity as agent at said station with the checking and handling of said freight? After careful consideration of all authorities cited by appellant, we have reached a negative conclusion.

Unquestionably, from the undisputed facts, appellee was in said car in the discharge of his duty as agent of the Gulf, Colorado & Santa Fé Railroad Company for the purpose of properly checking this iron which was being delivered to that company by appellant, and he was therefore not an intruder, meddler, or stranger to the work that he was there performing, and while it is true, we think, that appellee was not bound or required to place his hand upon these bundles of iron for the purpose of steadying them until they might be placed upon a truck and taken from the car, yet it does not follow, we think, that his act in doing so terminated the relation of employer and employé that existed at least between him and the Gulf, Colorado & Santa Fé Railroad Company, and would not militate against his rightful presence in the car as a representative and agent of that company, and it cannot be held, therefore, that he was a mere intruder or meddler or stranger to either of the railroad companies on that occasion. On the contrary, the conclusion is irresistible, from the undisputed facts, that appellee was rightfully in said car of appellant, and was discharging his duty, and had gone in it for the very purpose of discharging his duty as agent at least for the Gulf, Colorado & Santa Fé Railroad Company, and therefore the servants of the Houston, East & West Texas Railway Company could not negligently injure him without that company incurring liability therefor, even if it should be true, as contended by appellant, that appellee was not its agent in the checking or handling of said freight, and not a joint agent for the two railroad companies, as was found by the jury. If it be true, as contended by appellant, that at most appellee was only the agent of the Gulf, Colorado & Santa Fé Railroad Company while he was in said car for the purpose of checking said freight, still it must be conceded that he was rightfully there in the interest of his employer, for the purpose of discharging his duty, owed by him as agent, which must, under the authorities refute the contention of appellant that appellee was a mere volunteer at the time and place where he was injured. Ward v. L. & N. Ry. Co., 98 Tenn. 123, 38 S. W. 728, 60 Am. St. Rep. 848; Weatherford Ry. Co. v. Duncan, 88 Tex. 611, 32 S. W. 878; Eason v. S. & E. T. Ry. Co., 65 Tex. 577, 57 Am. Rep. 606; E. L. & R. R. Ry. Co. v. Scott, 71 Tex. 703, 10 S. W. 298, 10 Am. St. Rep. 804; M., K. & T. Ry. Co. v. Rentz, 162 S. W. 960; Railway Co. v. Johnson, 48 Tex. Civ. App. 135, 106 S. W. 773; Railway Co. v. Blair, 184 S. W. 568; Railway Co. v. Pennewell, 50 Tex. Civ. App. 541, 110 S. W. 759. We conclude, without further discussion of the point, that the contention of appellant that appellee was in the attitude of a mere volunteer at the time he sustained his injuries cannot be sustained, and the first assignment must therefore be overruled.

The second assignment is to the effect that the plaintiff failed to prove any act of negligence which would render appellant liable, and that therefore the court should have instructed a verdict in its favor.

This assignment proceeds upon appellant's theory, which we have just discussed, that appellee was a mere volunteer, and that appellant owed him no duty other than not to willfully or wantonly injure him. The jury found, as we have shown, that appellant's brakeman, George Massey, was guilty of negligence which was the direct and proximate cause of appellee's injuries, and there is no contention by appellant that the evidence was insufficient to warrant such finding; and since appellant's contention that appellee was a mere volunteer cannot be sustained, the second assignment is overruled.

The third assignment is that the court erred in submitting special issues Nos. 1, 2, and 3, which issues we have hereinbefore copied. This assignment also is based upon the theory, as entertained by appellant, that appellee, at the time of his injury, was a mere volunteer, and that the evidence showed this without dispute. There is no use in discussing the contention further, and the assignment is overruled.

[4] The fourth assignment complains of the action of the court in refusing to submit the following issue requested by appellant:

"Did the plaintiff, M. Jackman, volunteer his services to assist the train crew of the Houston, East & West Texas Railway Company in unloading the freight from the car or in holding the iron against the side or wall of the car, at the time and just before the alleged injury? Answer Yes or No."

This special issue was requested, and its submission was refused. The proposition under the assignment is that if the plaintiff was a volunteer a different legal principle from that applied as to liability of master for an injury to a servant would be invoked. Hence it was error not to submit to the jury the special issue requested.

There is no contention by appellee that he was actually required by his contract of employment to physically assist in the unloading or loading of freight, but rather his testimony, considered as a whole, shows that he was really not required to render physical assistance in the handling of freight, and it is also practically admitted that what appellee did on the occasion in question was voluntary on his part; that is to say, no one requested him to steady the iron as

it leaned against the car, nor to render any physical assistance of any character in handling this freight. The facts, however, of this case show, as we have concluded, that appellee was not a mere volunteer, in the legal acceptation of that term, whether his act in placing his hand on the iron to steady it against the wall was of his own volition, or whether he did so at the request of some of appellant's employés. We think that to have submitted such issue in this case would have submitted something that was without dispute; that is, that appellee, without being requested, attempted to assist appellant's brakeman in holding the iron against the wall. To have submitted the issue would have tended to confuse rather than assist the jury in the determination of any material controverted issue in the case. The assignment is overruled.

[5] The fifth assignment complains because the court refused to submit this special issue:

"Did the plaintiff, M. Jackman, at the time and before he was injured, know approximately the weight of the iron and the way and manner in which same was placed against the side or wall of the car? Answer Yes or No."

The proposition under this assignment is as follows:

"The common-law defense of assumed risk being available to defendant under the facts of this case, the requested special issue should have been given as bearing upon that issue, and the refusal of the court to submit it was such error as to require reversal."

In answer to this assignment and contention, it will be sufficient to say that it was not contended by appellee that the weight of the iron or the way in which it was placed against the wall of the car constituted any negligence which proximately caused his injuries. His contention was that appellant's brakeman's act in suddenly and without warning letting loose of the iron was negligence on the part of the brakeman, which became the proximate cause of appellee's injuries. Therefore it was not error to refuse to submit the issue thus requested, because, if it had been submitted and answered affirmatively, such answer would not establish in appellant's favor the defense of assumed risk and call for judgment in its favor. In addition to this, as we view appellant's pleading, there was no such plea of assumed risk. The assignment is overruled.

[6, 7] The sixth assignment of error challenges the action of the trial court in permitting appellee, over objection of appellant, to testify that he (appellee) was joint agent for all purposes of both defendants to this suit, the objection being that such evidence was but the conclusion and opinion of the appellee. Appellant, under this assignment, contends that, it being a sharply contested issue whether appellee was its employé in any capacity, it was error prejudicial to appellant to permit him, over its objection, to testify that he was joint agent for all purposes for both railroads; that if any such issue was raised by the evidence it was an issue for the jury to determine, and not for the determination of appellee himself.

It is shown by the bill of exceptions in this connection that appellee was permitted, over appellant's objection, to testify, substantially, that he was joint agent for the Houston, East & West Texas Railway Company and Gulf, Colorado & Santa Fé Railroad Company at Cleveland Junction on the occasion in question for all purposes in the checking and handling of freight with which such companies were concerned. It appears from the record, however, that appellee testified in detail as to the acts performed by him for both companies, and stated in minute detail the character of all services performed by him, and upon which he based his statement that he was agent for both companies. We do not understand that a witness is prohibited from stating on the witness stand in court that he is the agent of another or the joint agent for others, and especially so where the witness testifies in detail and fully explains why he claims to be such agent. If his mere statement that he is agent be but his opinion or conclusion, still if the facts detailed by him show that he is, in fact, such agent as he claims to be, then no harm is done by his statement in so many words that he is such agent. The bill of exceptions has this qualification by the trial judge:

"Agreed to, with this proviso: The plaintiff in same connection further testified, explaining what he meant by the term 'joint agent,' and detailed the services he performed at said junction station."

This qualification by the trial judge clearly shows his reason for not sustaining the objection, and, as stated above, we find the record fully bears out the truth of the qualification, and we hold that no injury resulted to appellant in admitting this testimony.

In the case of Autrey v. Linn, 138 S. W. 198, the court, among other things, said:

"The evidence of an agent in court as to his agency does not come within the rule that agency cannot be proved by the declarations of the agent. It is the well-established rule that, while the declarations and admissions of the agent are inadmissible to prove agency, yet the agent himself is competent to testify as to the alleged agency and its extent."

It will be observed in this connection that the testimony here objected to was not in the nature of a declaration made by the witness outside of court, by which it was sought to establish his relation as agent for the

defendants in this case; but it was his sworn evidence adduced in open court upon the trial, and therefore was not prohibited by the rule which makes inadmissible the declarations of an agent outside of court for the purpose of establishing a claimed agency. See, also, Alamo Com. Co. v. Heimer, 192 S. W. 592; Oil Well Supply Co. v. Metcalf, 174 Mo. App. 555, 160 S. W. 897; Railway Co. v. Brown, 155 S. W. 979. We think no prejudicial error is shown by this assignment, and it is overruled.

[8] The seventh assignment relates to the action of the court in permitting counsel for appellee, over appellant's objection, to propound to appellee, while a witness on the stand, these questions:

"Q. Were you and the porter going about the handling of that freight in any manner different from the way you were handling it that day?"—to which question the plaintiff answered "No."

"Q. Did any official of the Houston, East & West Texas Railway Company ever tell you you didn't have any right to do anything for them, except to sell tickets?"—to which the plaintiff answered "No."

The objection interposed by appellant to these questions and answers was that the questions were leading and suggestive, and the answers to same, therefore, prejudicial. Appellant makes this proposition under the assignment:

"If, as the testimony shows, the plaintiff was the employé only of the Gulf, Colorado & Santa Fé Railway Company, and not of appellant, and turned aside from his duties for ever so short a time, and volunteered to assist the servants of the appellant in holding the sheets of iron, the fact that no official of the appellant company ever told him that he did not have any right to do anything for appellant, except to sell tickets, would not change his status as a volunteer, nor justify him in performing services outside of the line of his regular employment. The case being tried before a jury, the question propounded and the answer elicited was calculated to induce the jury to believe that the appellee would have the right to perform any service for the appellant that he was directed not to perform, and that in so doing, in the event of his injury, the appellant would be liable, and was therefore prejudicial."

Again, we say that it will be readily observed that this assignment is based upon appellant's theory that appellee was but a volunteer as to appellant at the time he received his injuries, which theory we have hereinbefore shown cannot be sustained. If the questions were leading and suggestive, as contended, the court's action in permitting them and the answers thereto did not result, in our opinion, in any injury to appellant, and the assignment is overruled.

[9] Appellant, under its eighth assignment of error, complains that the verdict is excessive, and that the jury was either actuated by prejudice or malice against appellant or by sympathy for the plaintiff, or was actuated, in allowing such large amount in appellee's favor, by some motive other than to allow a fair compensation for the injuries sustained by appellee.

As we have already stated in the beginning, the amount found by the jury in appellee's favor was $12,500. As to the extent of appellee's injuries, the jury had to be guided alone by the testimony of the appellee, because there was no other testimony in the case on that issue. In the very nature of things, it must be held that the amount which will fairly and justly compensate a person who has suffered serious and permanent personal injuries must be left largely to the sound discretion and impartial judgment of the jury, and a verdict by the jury is usually accepted as binding and conclusive upon the court, and especially upon the appellate court, unless it is manifest to that court that the jury was inflamed or influenced by passion, prejudice, sympathy, or some other improper motive in arriving at the verdict. It frequently happens in cases of this character that in the opinion of the appellate court the amount awarded by the jury to the injured plaintiff was too much, or rather more than ought to have been allowed. Nevertheless the appellate courts of this state have adopted the rule that such verdicts will not be set aside by them unless they are able to say from the record that it is manifest that such verdicts were prompted by passion or prejudice against the defendant, or by sympathy in favor of the plaintiff, or some other improper motive of that kind, and therefore ought to be set aside. We are unable to say from the record in this case that the amount awarded the appellee was prompted by any such motive.

The undisputed testimony in the case shows that appellee was very seriously injured by the heavy iron which fell on him, mashing him to the floor of the car; the most serious of such injuries being the breaking of his left thigh just below the hip and the breaking of his right leg just below the knee. There were other injuries, such as bruises and sprains about his legs, but which, in comparison to those just mentioned, were of minor consideration. The testimony further shows, without dispute, that appellee was confined for more than five months continuously in the hospital, and most of that time in bed, in consequence of his injuries, and that it was necessary to perform at least three operations in setting and resetting his broken limbs; that a silver plate had to be inserted in his left thigh, which remains there, and that the injury to that leg has left it stiff and much weaker than it was before the injury. Appellee testified that he was a stout, healthy young man before his injury, but that since his injury his capacity to

217 S.W.—27

get out and labor has been greatly impaired and destroyed; that it is almost impossible for him to go up stair steps, by reason of the stiffness of his leg and the pain which accompanies his effort, and that he suffered even up to the time of the trial much pain at times in his broken limbs, and especially during sudden changes of the weather; that at times he cannot sleep because of the pain that he still endures in consequence of these injuries; that after he was released from the hospital, where he had been confined for more than five months, it was still approximately seven months before he undertook or was able to undertake the performance of any character of labor. At the time he was injured he was earning a salary of a little more than $100 a month as station agent, but the proof showed upon the trial that he was then receiving a salary of $125 per month as timekeeper for the Foster Lumber Company. It is further shown, however, by the undisputed evidence, that the salary of the agent at Cleveland, at the time of the trial, was $131, and that salaries of all such agents had increased since the time when appellee was injured. Appellee further testified that his work for the Foster Lumber Company consisted mostly of writing—that is, keeping the time of employés of that company—and that on account of his injury he was greatly handicapped in getting about in the discharge of his then duties or in any other respect.

Now, appellant takes the position that, since it appears from the evidence that appellee was making more money at the time of the trial and some time before that time than he was making at the time of his injuries, it was conclusively shown that appellee's earning capacity had not been materially impaired, and that, therefore, the verdict of $12,500 in his favor was excessive, because no such sum should have been rendered merely for pain and suffering.

In the first place, it cannot be successfully contended that, because appellee was making more money since his injury than he made before in the capacity of timekeeper for the Foster Lumber Company, his earning capacity had not been impaired. If appellee, for instance, should lose his position as timekeeper for the Foster Lumber Company, it might be difficult to obtain another position which would pay him any such compensation in his impaired state, and in this connection it might be remarked that wages for all character of labor have advanced greatly since appellee was injured, and in many instances since the trial of this case below. M., K. & T. Ry. Co. v. Rogers, 201 S. W. 417; T. & P. Ry. Co. v. Williams, 196 S. W. 230; G., C. & S. F. Ry. Co. v. McKinnell, 173 S. W. 937; Yellow Pine Co. v. Lyons, 159 S. W. 909; G. H. & S. A. R. R. Co.

v. Miller, 192 S. W. 599; Brewing Ass'n v. Gerlach, 185 S. W. 316; Freeman v. Grashel, 145 S. W. 698.

We shall not attempt to quote the appellee's testimony in detail bearing upon the physical pain and suffering that resulted to him in consequence of the injuries sustained, but suffice it to say that such physical pain and suffering, according to his testimony, was extremely intense and prolonged, and according to his testimony he still suffers severe pain in consequence thereof. It would serve no useful purpose to detail the lengthy testimony on this point. We have reached the conclusion that, notwithstanding the fact that appellee has been able to earn more money since the injury than he was earning at the time thereof, yet, taking into consideration the extreme pain and suffering which has attended his injuries, and probably will continue to attend them for some time in the future, we cannot say that the verdict in his favor was so manifestly excessive as to warrant this court in setting it aside. This assignment is therefore overruled.

[10] The ninth assignment of error, without stating it in detail, points out no error. It relates to the action of the court in permitting the appellee to testify as to the treatment that he was compelled to undergo for his injuries, and the pain and suffering that he underwent while such treatment and care was being taken of him in the hospital, and by physicians in attending him, and all of it was for the purpose of showing the extent of his physical pain and suffering while he was being treated for his injuries. His testimony in that connection was clearly admissible, as showing the extent of such pain and suffering, which was an element of damages to be considered in this connection. The assignment must be overruled.

[11] The tenth assignment of error is as follows:

"The defendant is entitled to a new trial for the reason that the court erred in rendering judgment for the plaintiff against appellant only, for the reason that if the plaintiff was the joint agent of the defendants for the purpose of handling freight while the same was being unloaded and loaded, and was performing his duties as joint agent, then he was performing a duty that he owed to the defendant Gulf, Colorado & Santa Fé Railroad Company, and if he was performing a service for it, and it was his duty as agent of the Gulf, Colorado & Santa Fé, as well as joint agent for the Houston, East & West Texas Railway Company to unload said freight, then he was performing a service for the Gulf, Colorado & Santa Fé Railway Company, and if the plaintiff was performing said service, then the servants of the defendant Houston, East & West Texas Railway Company were likewise performing a joint service for the Gulf, Colorado & Santa Fé Railway Company and the Houston, East & West Texas Railway Company, and if said employés, including the plaintiff, were performing a joint service for the Houston, East & West Texas and the Gulf,

Colorado & Santa Fé, then the liability was joint and not several."

This assignment is submitted as a proposition and thereunder the following additional propositions are submitted:

"(1) There can be no clearer principle than that where the jury has intervened and all the issues have been submitted to their decision, their verdict must constitute the basis of the judgment. The court cannot look to the evidence on which the verdict was found in order to determine what judgment to render, but must look alone to the verdict; for it is upon that which the jury have found—not what they might or ought to have found—that the court proceeds to render judgment. The judgment is the conclusion of law upon the facts of the case as found by the verdict of the jury. If the court might look to the evidence outside of the findings of the jury for the facts on which to give judgment, the verdict might be wholly disregarded and the right of trial by jury defeated.'

"(2) Where a special verdict entitles a party to a judgment, the court must either set the verdict aside or render judgment thereon, but cannot render judgment contrary thereto."

We concede both of the additional propositions of appellant, as just quoted, to be correct; but they have no application in this instance. The verdict of the jury in this case consisted, as we have shown, of the jury's answer to specific questions submitted by the court. The jury, by its verdict, said in effect that appellant's brakeman, George Massey, who under the undisputed testimony in this case was in the exclusive employ of appellant, suddenly and without warning let loose the sheets of iron which injured appellee, and further that the act of appellant's said brakeman in so letting loose said iron was negligence on the part of said brakeman, and further that such negligence on the part of appellant's brakeman was the proximate cause of appellee's injury. The verdict of the jury does not affirm that the defendant Gulf, Colorado & Santa Fé Railroad Company, or any of its servants or agents, were guilty of any negligent act or omission which resulted in injury to appellee. Therefore there was nothing in the jury's verdict which compelled the rendition of judgment against the Gulf, Colorado & Santa Fé Railroad Company. It is true that in answer to special issue No. 9, which was requested by both defendants, the jury found that appellee was the joint agent of appellant and the Gulf, Colorado & Santa Fé Railroad Company in handling the freight in question at the time he was injured; but it does not necessarily follow from that finding that liability was fixed against the Gulf, Colorado & Santa Fé Railroad Company.

Let it be conceded, as the jury found, that appellee was the joint agent of the two railway companies, yet it was not contended by any pleading on the part of appellee, as we view this record, that the Gulf, Colorado & Santa Fé Railroad Company or any of its employés were guilty of any negligence towards appellee which proximately caused his injuries. On the other hand, the pleading of the appellee was to the effect that appellant's brakeman, George Massey, was guilty of the negligence which proximately resulted in injury to appellee. The only theory upon which appellee sought to establish any liability against the Gulf, Colorado & Santa Fé Railroad Company was that appellee was the joint agent at Cleveland Junction of the two companies, and that such joint agency rendered the Gulf, Colorado & Santa Fé Railroad Company liable, even though the negligence causing the injury was that of the brakeman, George Massey, who was in the exclusive employ of appellant, Houston, East & West Texas Railway Company. Now appellee, by a cross-assignment in this court, also complains that the trial judge erred in not rendering judgment in his favor against the Gulf, Colorado & Santa Fé Railroad Company, as well as against appellant. After consideration and review of the authorities cited by both appellant and appellee on this point, we have concluded that the court was correct in rendering judgment in favor of the Gulf, Colorado & Santa Fé Railroad Company, for the reason that neither the pleading nor the evidence warranted any judgment against that company, since it was claimed in the pleading of appellee that the negligence which resulted in his injury was that of appellant only, and since the evidence also shows conclusively that it was the negligence of appellant's said brakeman which proximately caused appellee's injuries, and there is nothing in the jury's answers which prevented such judgment.

In the brief of counsel for the Gulf, Colorado & Santa Fé Railroad Company in this case, we find this proposition of law:

"Unless the brakeman, George Massey, whose negligent act is alleged to have caused the injury, was an employé, either jointly or separately, of the Gulf, Colorado & Santa Fé Railroad Company, that company would not be liable for his negligent act, although it may have resulted in an injury to a joint employé of the two companies. The Gulf, Colorado & Santa Fé Railroad Company would only be liable for its own negligent acts or omissions, or for the negligent acts or omissions of its agents, servants, and employés, and in the absence of either allegation or proof that said brakeman, George Massey, at the time he committed the negligent act, was either the joint or separate employé of the Gulf, Colorado & Santa Fé Railroad Company, it cannot be held liable for the act, and the court properly so held."

We think this proposition announces a correct and just rule of law, and it is a complete answer to the tenth assignment of error on the part of appellant, and also to the cross-

assignment of appellee, complaining that judgment should have been rendered in his favor against the Gulf, Colorado & Santa Fé Railroad Company. We do not discuss the authorities cited by appellee under his cross-assignment, but simply hold that none of them support his contention in this case. We therefore overrule the tenth assignment of appellant and also the cross-assignment of appellee.

It follows, from what we have said, that the judgment of the trial court in this case should be affirmed in toto; and it will be so ordered.

