## LANGAN v. TYLER.

(Circuit Court of Appeals, Second Circuit. February 25, 1902.)

No. 42.

1. MASTER AND SERVANT—CREATION OF RELATION—VOLUNTARY ASSISTANCE OF SERVANT.

One who renders temporary service in assisting a servant in his work, at the latter's request, without expectation of pay, and where the master had no knowledge of the performance of the services, and the servant no authority to employ help, does not thereby become a servant of the master so as to charge the latter with the active duty of providing him with a safe place in which to work.

2. SAME.

Plaintiff's intestate, at the request of defendant's servant, employed to run an elevator in defendant's building, assisted the latter in taking apart an electrical machine used to furnish power for the elevator, which the servant thought did not work properly. The servant had no authority to have the work done, his instructions being to report any defects or needed repairs in all cases to defendant's agent in charge of the building. Neither defendant nor his agent had any knowledge of the service, which was rendered without expectation of pay. After the machine had been put together again and started, plaintiff's intestate was killed by the giving way of a hanger in the machinery room. *Held*, that the deceased was not a servant of defendant to whom the latter owed the duty of care in providing a safe place to work, and that defendant was not liable for his death, even though defendant may have been chargeable with the notice of the defective condition of the hanger.

In Error to the Circuit Court of the United States for the Eastern District of New York.

. This cause comes here upon a writ of error by the plaintiff below to review a judgment of the circuit court, Eastern district of New York, entered upon direction of a verdict in favor of defendant below. The facts appear in the opinion.

R. J. Moses, for plaintiff in error.

F. V. Johnson, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. Plaintiff sued as administratrix of Thomas Langan, deceased, to recover damages, on the theory that the accident which caused his death was the result of negligence for which the defendant should be held responsible to his estate. Langan, a man 33 years of age, was the brother-in-law of Anthony Brennan, aged 22, who was in the employ of defendant. He himself was engaged running a stationary engine on premises a few blocks away from defendant's, and used to do odd jobs as he got a chance, putting in batteries and electric bells and repairing electrical apparatus. Brennan was employed in defendant's building 39 Great Jones street, having been hired by a Mr. Talmadge, who represented the owner as agent, in charge of the premises. Brennan's duties were to run the elevator and take care of the boiler and keep the place clean. He had been instructed that if anything was the matter with the machine, if he needed any assistance, he was to report to Talmadge; that, no matter what was out of order, he was to see him first. Talmadge used generally to come on Tuesdays to inspect the premises, though some times he would not come for two weeks. The accident happened on February 9, 1899. For some time prior thereto the elevator had been "running all right." Brennan testified that he ran the elevator throughout the day (February 9 from 7 a. m. to 5 p. m.); that he ran it the day before, and everything ran properly; that the only thing he noticed about it was that it did not make, as he thought, its proper speed; that in all other respects he saw nothing defective; he could control it to stop it anywhere he saw fit; that there was no apparent defect in it; and he ran it up till 5 o'clock, and the only objection he found was that it ran slowly. After he had shut down at 5 o'clock Brennan tried to telephone to Talmadge, but the latter was not in. He then, about 5:15 p. m., went where Langan was employed, and asked him to come over. On one occasion, about three months before the accident, when the commutator was sparking, he had, of his own motion, brought Langan over to fix it. He had subsequently mentioned this circumstance to Talmadge. On the occasion in question here, Langan came over to defendant's premises about 7 p. m., and went with Brennan into the machinery room. The two men took the machine apart, and after working over it about an hour put it together and started it. The details of the accident are not material,—decedent was killed by the giving way of a hanger; and there was evidence in the case, somewhat contradictory it is true, from which a jury might perhaps have reached the conclusion that the defendant was charge-

able with the knowledge that for some time past its fastening had not been secure.

The brief of plaintiff seeks to sustain a right to recover upon the principle that a master is bound to provide a safe place to work in, and is responsible to his employé for an injury sustained by the latter from a defect in the building where he works, which the employer knew of, or might have known of, by the exercise of ordinary care. The only question in the case, as presented here, is whether or not Langan's legal relation to defendant at the time of the accident was that of servant to master. Langan was not employed by Tyler, nor by Tyler's agent, Talmadge. He was a volunteer, assisting his brother-in-law at the latter's request, without expecting any compensation therefor from defendant. There are many cases in the books treating of the legal relation of a volunteer who undertakes to assist the servants of a master. Most of them deal with the question whether the master is liable to him for the negligence of the servants with whom he works. Where there is some personal interest on the part of the plaintiff in having the work done, as where a passenger on a street car helps to push it back over a switch, or a teamster helps the driver of a team ahead of him to repair some break-down which obstructs the road, or helps the servants of another to load his own cart with coal, it has been held that the relationship between the volunteer and the servant's master is not such as to warrant the application of the rule which relieves the master from any obligation to respond. Railway Co. v. Bolton, 43 Ohio St. 224, 1 N. E. 333, 54 Am. Rep. 803; Holmes v. Railway Co., L. R. 4 Exch. 254, L. R. 6 Exch. 123. There are other cases which hold that a mere volunteer, without any personal interest, cannot recover when the injuries result from the negligence of those servants with whom he works, not upon the ground that by volunteering he has made himself their fellow servant and established with their employer the legal relation of master and servant, but upon the ground that he cannot thus put himself in a better position than the servants he volunteers to help. So where servants of a railroad company were busy at a turntable, which moved with difficulty, and the plaintiff, observing them, called out to wait a moment and he would help them, and did so, and was injured by their negligence, the court said: "He cannot, by volunteering his services, have any greater rights, or impose any greater duty, on the defendant than if he was a hired servant." Degg v. Railway, 1 Hurl. & N. 773. So, in another case, the court said:

"One who volunteers to associate himself with the defendant's servant in the performance of the defendant's work. and this without the consent, or even the knowledge. of the defendant. cannot stand in a better position than those with whom he associates himself in respect of their master's liability. He can impose no new or greater obligations on the employer than those to which he was subject in respect of the employed." Potter v. Faulkner, 31 Law J. Q. B. 30.

These authorities, however, come far short of sustaining the proposition that the volunteer may by volunteering to act make himself a servant, and impose upon the master obligations which the latter owes only to his servants.

As was stated before, neither defendant nor defendant's agent ever employed Langan. To Brennan no authority to employ extra help, or to select individuals to make repairs, or to improve the running of the elevator, was ever intrusted. The mere circumstance that three months before he had invited his brother-in-law to remedy the sparking at the commutator, and had told Talmadge he did so, to which the latter did not object, is not sufficient evidence of authority to employ an additional temporary servant to help do the master's work. The plaintiff's counsel submits the following proposition:

"Where the services are rendered by request of the man in charge, though the person assisting expects no pay, and is employed for a mere temporary purpose, he is for the time being a servant, and entitled to the same protection as any other servant."

The cases cited on the brief, however, do not support this broad statement. Railway Co. v. Bolton, 43 Ohio St. 224, 1 N. E. 333, 54 Am. Rep. 803; Degg v. Railway Co., 1 Hurl. & N. 773, and Potter v. Faulkner, 31 Law J. Q. B. 30, have been referred to supra. In Bradley v. Railroad Co., 62 N. Y. 99, the track master, who engaged plaintiff to scrape snow with his team, had express authority to hire extra help when occasion required. The language of the proposition in the brief is evidently taken from Johnson v. Water Co., 71 Wis. 553, 37 N. W. 823, 5 Am. St. Rep. 243, where the court says:

"Plaintiff was engaged in defendant's work at the request of the man in charge of the work; and although it may be said that he was working for a mere temporary purpose, and that the plaintiff was not expecting any pay for the work done, and in that sense the employment was voluntary, still, being in the defendant's employment at the request of its servant or foreman, he was not a trespasser, and he was at the time being the servant of the defendant, and entitled to the same protection as any other servant of defendant, and probably subject to the same risks of injury from the negligence of his fellow servants."

In that case plaintiff was in the employ of contractors who were digging a ditch for defendant. Other men were in the same trench, laying pipe and calking it for defendant. He was called by one George G. to help them, and the accident happened apparently because an insufficient force was employed in the laying and calking. But it should be noted that the case came up on demurrer, and the complaint alleged that one "Pooley was the superintendent of said defendant, and as such superintendent had charge of said work of calking, and employed men to do such work, and when he was off George G. was authorized by Pooley to have control of the work and of the men who were assisting in such work." In Wiggett v. Fox, 11 Exch. 832, it was held that a subcontractor and his servants were the fellow servants of workmen employed by the contractor. In Warburton v. Railway Co., L. R. 2 Exch. 30, the porter of a railroad company was held not to be the fellow servant of an engine driver of another railroad, both roads using the same station. In Abraham v. Reynolds, 6 Jur. (N. S.) 53, it was held that the servant of a carter who called to receive a bale of cotton and brought the rope with which to lower it was not the fellow servant of the employés of the owner of the bale who undertook to lower it. In Railroad Co. v. Harrison, 48 Miss. 112, 12 Am. Rep. 356, the injured person was defeated on the ground of contributory negligence.

The last case cited to sustain the proposition that the request of an unauthorized servant is sufficient to transform a volunteer into a servant supports no such proposition. A fireman, acting as engineer on a railroad train, which was at a water station, asked a young boy to turn on the water. The boy was climbing on the tender to put in the hose, when other cars struck the car attached to the engine and knocked him off. The court said:

"In climbing the side of the tender at the request of the fireman, to perform the fireman's duty, he did not come within the protection of 'the company. To recover the company must have come under a duty to him which rendered his protection necessary. * * * The boy was where he had no right to be, and where he had no right to claim protection,—where the company was in use of its private ground, and was not abusing its privileges, or trespassing on the rights or immunities of the public. The only apology for his presence there is the unauthorized request of one who could not delegate his duty, and had no excuse for visiting his principal with his own thoughtless and foolish act." Flower v. Railroad Co., 69 Pa. 210, 8 Am. Rep. 251.

To the same effect is Rhodes v. Banking Co., 84 Ga. 320, 10 S. E. 922, 20 Am. St. Rep. 362, where brakemen asked a boy to help them pull a car, and he did so. "The plaintiff's son," says the court, "was not a fellow servant with the servants of the defendant in error. To be the servant of another, there must be some contract or some act on the part of the master which recognizes the person as a servant, either express or implied." In Everhart v. Railroad Co., 78 Ind. 292, 41 Am. Rep. 567, plaintiff was returning home along a street intersected by defendant's tracks on which several flat cars were slowly moving. An employé of defendant, who was employed about such tracks, requested plaintiff to get upon one of said cars and apply the brake. He did so, and was injured. The court says:

"If the plaintiff were to be regarded as having been the servant of the defendant, it would seem that he could not recover for the injury caused by the negligence of his fellow servants. But it seems to us that * * * he cannot be regarded as having been the servant of the defendant. He was not requested or directed to man the brake by any one that is shown to have had authority from the defendant to make such employment. * * * The plaintiff was a mere volunteer, consenting, at the request or direction of the defendant, to perform service which should have been performed by the employés themselves, and, while he cannot be regarded as an employé, he is in no better condition than if he had been. Nor is he in any better condition legally than if he had been a mere intermeddler, undertaking to perform the service without request or direction from any one, because, as we have seen, he was not requested or directed to get upon the car and apply the brake by any one having power from the defendant to authorize him to do so. The defendant owed him no duty either as an employé, passenger, or traveler upon a highway crossed by the railroad. Under the circumstances, the authorities above cited make it clear that the defendant is not liable. If there had been an urgent necessity for some one other than an employé of the defendant to get upon the car or cars and apply the brakes, in order to prevent a destruction of human life or valuable property, possibly the case might be different, but no such necessity was shown."

See, also, Church v. Railway Co., 50 Minn. 218, 52 N. W. 647, 16 L. R. A. 861. In that case plaintiff was requested by the head brakeman of a wrecking train to assist in switching the cars. The court held that it "was necessary for the plaintiff to establish, as the essential foundation of his right to recover, the existence of the relation of master and servant between himself and the defendant company,

and this, in turn, depended upon the authority of the head brakeman to employ him to assist in the switching." It says:

"In our opinion, none of the evidence introduced or offered had any tendency to prove any such relation between plaintiff and defendant, or any such authority on the part of the head brakeman. The fact that plaintiff had been or was in the employment of the defendant elsewhere is wholly unimportant. He was not at the station on defendant's business. He was not an employé of defendant at that place or as to the switching of that wrecking train. The case stands precisely as if the head brakeman had called on any other bystander at the station to assist. While the head brakeman had charge of the movements of the train in doing this switching during the temporary absence of the conductor from the cars on other business, yet this was the entire scope and extent of his authority. The conductor had not abdicated the general charge and control of the train or turned it over to the brakeman. The latter had no authority, actual or apparent, express or implied, either from custom or from any present pressing emergency, to employ additional brakemen, either permanently or temporarily. It was wholly immaterial whether two brakemen were or were not sufficient to do the switching. Even if they were not, that fact would not, under the circumstances, give a mere brakeman authority to employ an additional force. If any one on the ground had any implied authority to do so it was the conductor, who had charge and control of the train. In doing what he did the plaintiff was, therefore, a mere volunteer, and as such assumed all the risks incident to the position. The defendant did not bear to him the relation of master or employer, and owed him no duty as such."

In Morris v. Brown, 111 N. Y. 318, 18 N. E. 722, 7 Am. St. Rep. 751, plaintiff's intestate was an engineer, who, when going to inspect the tunnel for the Croton aqueduct, rode (as he often had ridden before) on a returning dump car of the defendants, who were excavating the tunnel. Eventually this turned out to be an unsafe way of getting to his destination. In the opinion is found the following:

"Plaintiff did not acquire any right to be upon the car through any consent or act or acquiescence on the part of the defendants. The brakeman of the car had known it, but neither his knowledge nor assent could bind defendant. He was not their agent for that purpose. It is a general proposition that a master is chargeable with the conduct of his servant only when he acts in the execution of the authority given him. * * * In the case before us the brakeman was never told or authorized to carry any person, and if he acquiesced in, or by silence consented to, the intestate's going in upon the cars, there is no evidence that in doing so he was acting in the line of his duty or within the scope of his employment. The deceased had, in fact, ridden upon the car. He had done so under no other permission,—a volunteer, but in safety. In each instance, however, he must be deemed to have assumed the risk, and this last time he was unfortunate. The consequences of that misfortune should not be thrown upon the defendants."

It will be remembered that the only negligence charged upon defendant in the case at bar is the failure to keep the hanger securely affixed to its place, or to discover from reasonably careful inspection that it was loose and likely to give way under strain. This measure of active vigilance to secure a safe place to work in and safe appliances to work with may be required of the master by the servant he has employed, but is not due to a stranger. A leading case in this state is Larmore v. Iron Co., 101 N. Y. 393, 4 N. E. 752, 54 Am. Rep. 718. There plaintiff went upon premises of defendant to solicit employment. He passed near a piece of machinery for raising ore. The machine was defective, and by its breakdown while he was near it he was injured. He insisted that defendant was negligent in omitting to take

114 F.—46

affirmative measures to ascertain and remedy defects. The court held that as to persons standing in certain relations to defendant a duty rested upon the company to exercise reasonable care in the maintenance and reparation of the machine; "but the plaintiff stood in no such relation to the defendant as imposed upon it the duty to keep the machine in repair. He was in every legal sense a stranger to the defendant. * * * There is no negligence, in a legal sense, which can give a right of action, unless there is a violation of a legal duty to exercise care. The duty may exist as to some persons and not as to others, depending on peculiar relations and circumstances. * * * In the case before us there were no circumstances creating a duty on the part of the defendant to the plaintiff to keep the machine in repair. * * * The machine was not intrinsically dangerous. The plaintiff was a mere licensee. The negligence, if any, was passive, and not active of omission and not of commission." The same principle is enunciated in Nicholson v. Railway Co., 41 N. Y. 529, where the court says:

"Plaintiff had an implied license to cross at that point, and hence he was lawfully there. He was not there by invitation of the defendant nor in the business of defendant. * * * While he was lawfully there he had no right, as against the defendant, to be there. It could at any time have revoked the license. * * * Defendant owed him the intestate no active duty. It owed him no duty whatever, except such as every citizen owes another. It had no right intentionally to injure him, and would be liable if it needlessly or carelessly injured him while performing its own business. It owed him a duty to abstain from injuring him either intentionally or carelessly, but it did not owe him the duty of active vigilance to see that he was not injured while upon its land merely by permission."

In our opinion, the direction of a verdict in favor of defendant was correct, and the judgment is affirmed.