33639.   CALLAHAM *v.* CARLSON *et al.*
33646.   CARLSON *v.* RICH'S INCORPORATED *et al.*

Decided October 4, 1951.   Adhered to on Rehearing November 15, 1951.

6

*T. J. Long,* for plaintiff in error in case No. 33639.

*Houston White, Robert D. Tisinger, W. Neal Baird, Neely Marshall & Greene, Smith, Field, Doremus & Ringel, T. O. Hathcock,* contra in case No. 33639.

*Robert D. Tisinger, Houston White, Emory A. Schwall,* for plaintiff in case No. 33646.

**12**

*Neely, Marshall & Greene, W. Neal Baird, Ferdinand Buckley, Smith, Field, Doremus & Ringel, T. O. Hathcock, T. J. Long,* for defendants in case No. 33646.

FELTON, J. ■ ■ The plaintiff contends that the defendants were guilty of negligence per se in that they failed to raise the fourth floor hoistway gate to the elevator in question to a height of 66 inches as required by the city ordinance concerning elevators. This contention might be based on two theories. First, it could be based on the theory that the American Standard Safety Code for elevators, which was adopted by the City of Atlanta as the legal code for the city in the ordinance of 1938, required hoistway gates existing at the time of the adoption of the ordinance to be raised to 66 inches. The provision of the American Standard Safety Code relied on is as follows: "Existing hoistway doors or gates at any landing shall comply with the dimensions for gates given in the preceding paragraph, unless the car is equipped with a door or gate which is provided with an electric contact." If this were the only provision in the 1938 elevator ordinance, the contention of the plaintiff might be sound. However, the 1938 ordinance, after adopting the American Standard Safety Code by reference, provided that "Elevators, dumbwaiters and escalators, legally installed before the adoption of this Code, may be used without being reconstructed to comply with the requirements of the Elevator Safety Code, except that the following rules must be complied with: . ." We are of the opinion that there is a conflict within the ordinance as to whether hoistway gates were required to be raised to 66 inches whether or not the elevator proper was altered as described in the part of the ordinance requiring compliance as to the hoistway gates. The American Standard Safety Code required the hoistway gates to be raised to 66 inches regardless of an alteration in the elevator proper. We think the later provision in the ordinance nullifies the American Standard Safety Code provision as to the raising of the hoistway gates when it provides that existing elevators may be used without being reconstructed to meet the requirements of the code. *Gilbert* v. *Ga. R. & Bkg. Co.,* 104 *Ga.* 412 (1) (30 S. E. 673) ; *Lamar* v. *Allen,* 108 *Ga.* 158, 164 (33 S. E. 958) ; *Tyler* v. *Huiet,* 199 *Ga.* 845, 850 (36 S. E. 2d, 358) ; *Darby* v. *DeLoach,* 190 *Ga.* 499, 501 (9 S. E. 2d,

626). The plaintiff contends that the code provision as to existing elevators does not apply to the hoistway gate because the gate is not physically a part of the elevator but is a part of the building wall. With this contention we cannot agree. While the hoistway gate is not physically a part of the elevator and is a part of the wall, it is nevertheless a part of the elevator installation and not only are the gates controlled by the elevator code, but it is inconceivable that a permit for an elevator be granted without a strict compliance with the safety provisions relating to the gates. So, while the alteration of an elevator gate may not be such an alteration as to require compliance with gate requirements, the gate is a part of the elevator in the general sense of the word inasmuch as under modern requirements there would seldom be an elevator without a gate or door, whether the gate or door was on or off of the elevator. The explanation of the definition of alterations requiring changes in gates is the fact that the nature of the elevator proper determines the type of gate necessary. The fact that the city likewise construed the ordinance would not necessarily be controlling, because we have cited the rule of interpretation which governs in this case, but the petition in effect alleges that the city construed the ordinance as we have done. It is alleged that the elevator gates were altered by permit from the city in 1941, to a height of 54 inches. In the absence of allegations to the contrary, it will be assumed that the application for the permit stated the height of 54 inches to which the doors were to be raised. If the city construed the ordinance to require the gates to be raised to 66 inches, presumably it would not have issued the permits without being assured that the gates would be raised to 66 inches. It would be anomalous to condemn the changing of the gates where they were changed by express permission from the city. Second, such a contention, to wit, that the defendants were guilty of negligence per se for not raising the gates to 66 inches, could be based on the theory that if such an alteration was made as required a raising of the gates, the gates would have to be raised prior to the other alterations. Section 49-102 of the ordinance, as codified in the Code of the City of Atlanta of 1941, does not require hoistway gates of existing installations, that is, elevators existing at the passage of

the ordinance, to be the height of 66 inches unless there has been an alteration or relocation of the installation. Under the allegations of the amended petition, the only alterations made to the elevator since the passage of the ordinance were those being made at the time the plaintiff sustained her injuries. The petition does allege that in January, 1941, the hoistway gates existing on the elevators at the time the plaintiff was injured, of a height of 54 inches, were installed, replacing wooden cross-bars, but under § 49-116 of the Atlanta City Code defining "alterations" as used in § 49-103 of such code, the installing of such hoistway gates was not such an alteration as would require the installation of 66-inch hoistway gates. We are then left with the contention that, during the alterations being made at the time the injuries were sustained, the hoistway gates of 66 inches in height should have been installed prior to any other alteration being made and specifically before the installation of the angle iron around the top of the elevator. There is nothing in the ordinance that says when, during the course of alteration of an elevator on which the hoistway gates are below the height of 66 inches, such hoistway gates must be raised to a height of 66 inches. Under a proper construction of the ordinance, the raising of the hoistway gates to the required height of 66 inches may be made as the final act of alteration. The ordinance merely requires that, upon completion of the alterations, the hoistway gates shall be 66 inches high.

█ It is also contended that the ordinance was violated because a Certificate of Inspection from the Superintendent of Electrical Affairs was not displayed in the elevator. The plaintiff avers that, had such a certificate been sought by the defendants, the Superintendent of Electrical Affairs would not have issued it to be exposed to public view unless the hoistway gates had been raised to 66 inches in height, and would not have let said elevator be used by any persons until the alteration to 66 inches had been made. This contention is also without merit. As was said in division 1 (a) of this opinion, there was no requirement that the hoistway gate be 66 inches high before the beginning of the alterations, and there is no requirement as to when during such alterations the gates had to be raised to a height of 66 inches; therefore, it cannot be said that the Superin-

tendent of Electrical Affairs would not have issued such certificate and would have prevented use of the elevator by any person until the gate had been raised to a height of 66 inches, when under the ordinance the gate raising could have been the last act in the alteration procedure. The requirement that a certificate be procured and displayed is only a regulatory or police measure in the nature of a license, like, for example, the requirement that a driver of an automobile have an operator's license before he can legally operate an automobile in the State. The determining factor as to the negligence of the defendants in the instant case is the actual condition of the elevator and whether or not it was negligently operated, and the procurement and display of a Certificate of Inspection. No causal connection between the failure to procure the certificate and the injuries is alleged. *Aycock* v. *Peaslee-Gaulbert Paint &c. Co.,* 60 *Ga. App.* 897 (5 S. E. 2d, 598). The petition, then, is defective in that it fails to show the defendants jointly liable on the theory that they were all guilty of negligence per se.

■ The plaintiff seeks to show that she was an invitee as to the defendant elevator company at the time and place of her injury, by alleging that, had not the defendant Henry requested her to pull down the fourth floor hoistway gate and hollow down to him, he would have had either to send another employee of the defendant elevator company to do it or to have done it himself. These allegations are not sufficient to allege that Henry was acting within the scope of his authority or employment when he made the request to the plaintiff. There is no allegation that the defendant lessee and the defendant elevator company jointly retained control over the elevator during the alteration so as to make an invitee of one the invitee of the other. Therefore, under this theory, the plaintiff was not alleged to be an invitee of the defendant elevator company. "One who without any employment whatever, but at the request of a servant who has no authority to employ other servants, voluntarily undertakes to perform service for a master is a mere volunteer, and the master does not owe him any duty except not to injure him wilfully and wantonly after his peril is discovered." *Early* v. *Houser,* 28 *Ga. App.* 24 (2) (109 S. E. 914). See also *Cooper* v. *Lowery,* 4 *Ga. App.* 120 (60 S. E. 1015). Nor would the plain-

tiff be considered an invitee of the elevator company by reason of her being an invitee of the lessee under the facts alleged. See division 3. The petition does not state a cause of action as to the defendant elevator company.

■ The petition alleges that the work being done by the defendant elevator company was "being done at the instance and direction of defendant owners and lessee." The petition does not specifically allege that either the defendant owners or the defendant lessee retained any control or direction over the work being done by the elevator company, so as to allege that the elevator company was an employee or a servant of either the defendant owners or the defendant lessee. Therefore, construing the petition most strongly against the plaintiff, under the ruling in *Southern Bell Tel. &c. Co.* v. *Dekle,* 83 *Ga. App.* 261 (1) (63 S. E. 2d, 275), the petition alleges the elevator company to be an independant contractor and not an employee or a servant of either the defendant owners or the defendant lessee. There are no allegations that the work would result in a nuisance, or would in its nature be dangerous to others, however carefully done; or that the alleged wrongful act was in violation of a duty imposed upon the owners or the lessee by contract or by statute; or that the owners or the lessee interfered with the execution of the work, or retained the right to direct or control the time and manner of executing the work; or that the owners or the lessee ratified the alleged wrongful act of the contractor, so as to render the defendant owners or the defendant lessee liable for the negligence of the independent contractor under Code § 105-502. Under such a construction of the petition the theory that the plaintiff was an invitee of the elevator company because she was an employee and invitee of the lessee would not be sustainable, since if the elevator company had exclusive control of the elevators, the plaintiff as an employee of the lessee would not occupy the status of invitee as to the elevator, either as to the elevator company or the lessee, in the absence of allegations showing an authorized invitation otherwise. The mere allegation that the employees of the lessee used the elevator during the period of repairs with the knowledge of the lessee and elevator company is insufficient to show an invitation by the lessee because, as above stated, the elevator company presump-

tively had exclusive control; the allegations are insufficient to show an implied invitation by the elevator company because they do not allege that the plaintiff used the elevator for other than her own convenience as respects the elevator company. In addition, there is no allegation that the defendant owners or the defendant lessee knew that the angle iron had been installed without raising the hoistway gate to a height of 66 inches; and both the defendant owners and the defendant lessee had a right to assume that the independent contractor, the defendant elevator company, would exercise ordinary care in executing the remodeling work being done; and the allegations will be construed to mean that they had no notice of the defendant elevator company's negligently doing the work, in the absence of an allegation of circumstances showing otherwise.

The court did not err in sustaining the general demurrers of the defendant owners and of the defendant lessee and in dismissing the actions as to each of them.

The court erred in overruling the general demurrer of the defendant elevator company.

*Judgment affirmed in case number 33646. Judgment reversed in case number 33639. Sutton, C.J., and Worrill, J., concur.*

*Judgments adhered to on rehearing. Sutton, C.J., and Worrill, J., concur.*