Argued March 21, affirmed April 24, 1957

# GRAHN v. NORTHWEST SPORT, INC.

310 P. 2d 306

*Francis Yunker* argued the cause for appellant. On the brief were Yunker, Fewless & Hannam, Portland.

*Edward L. Fitzgibbon,* Portland, argued the cause for respondent. With him on the brief were Black, Kendall & Fain, Portland.

Before LUSK, Presiding Justice, and ROSSMAN, WARNER and KESTER, Justices.

## LUSK, J.

Plaintiff, Merdena A. Grahn, was seriously injured when she was hit by a racing automobile driven by one Jerry Watts on a race track operated by the defendant, Northwest Sport, Inc. She brought this action against the defendant to recover damages for her injuries. The circuit court allowed a motion by the defendant for judgment of involuntary nonsuit, and plaintiff has appealed, assigning such ruling as error.

The plaintiff and her husband were followers of the sport of automobile racing. On the afternoon of Sunday, July 9, 1950, they went to the defendant's race track at the invitation of their friend, Paul Hendricks, who was the owner with Art Lombardi of a new racing

car, to watch Hendricks try out the car. No races were held on that day. In the party were also Mr. Lombardi, Harry H. Walters, mechanic for Hendricks and Lombardi, Mrs. Walters, and the two children of Mr. and Mrs. Grahn. They arrived at the track early in the afternoon, and the plaintiff with her family went into the grandstand and there remained until about 6:00 o'clock watching the Hendricks and several other cars "practicing," as it is called, and occasionally during that time looking at motorcycle races which were going on at an adjoining track. There were about 100 people in the grandstand. About 6:00 o'clock, the practice sessions being over, the plaintiff, with her family, left the grandstand and went down onto the race track. Others did likewise, and some 25 or 30 people were gathered in more or less of a group on the track when the accident occurred. The plaintiff and her husband and two children were standing on the track inside the crash rail, a low, heavily constructed barrier at the outer edge of the track. The plaintiff was leaning against the crash rail. While they were there the Hendricks car, which was parked in the infield, was driven onto the track by Watts, who had obtained permission to do so from Hendricks and Lombardi. He was told to drive slowly. According to the witness Walters, who was standing within a few feet of the plaintiff, he drove twice around the track at a speed of 55 or possibly 60 miles per hour, but on the last lap, just as he came out of a curve and was approaching the group of spectators, he speeded up, "poured on the gas," as Walters phrased it, apparently lost control, for he "came right at us," and ran into the plaintiff. Mr. Grahn was able to save himself and the children, but could not reach his wife and remove her from the path of danger.

The complaint charged the defendant with negligence in the following particulars:

"a. In allowing the said motor vehicle to be operated at a high, dangerous and excessive rate of speed so that the said motor vehicle could not be controlled while allowing this plaintiff to be inside the crash rail surrounding the said track;

"b. In allowing this plaintiff to be within the crash rail and in failing to warn her of the danger involved;

"c. In allowing the operator of the said motor vehicle to race upon the track while this plaintiff and others were within the crash rail;

"d. In failing to police the said drivers while upon the said track so as to prevent drivers from operating on the said track while this plaintiff was within the crash rail thereof."

The controlling question in the case is whether the plaintiff was an invitee of the defendant at the time she was injured, or a mere licensee. The only witnesses were the plaintiff, her husband, Mr. Walters, and Mr. James Ryan, former president of the defendant corporation. Mr. Ryan testified that speed contests at which admissions were charged were conducted at the track; that members of the Hardtop Association, to which Hendricks belonged, competed in these races and were permitted the use of the track for practice sessions on days other than race days but not on Sundays unless Sunday was a race day. Members of the public were invited to the practice sessions by interviews on the radio, and the witness knew that people came to practice sessions to watch the cars being tried out and the motorcycle races as well. People were encouraged to come to watch the practice sessions. The cars and the people were not supposed to be on the track at the same time. On a race day the people were

not allowed on the track until the race program was over. On a practice day, during the practice sessions, it was the rule to keep the people off the track. On a practice day "there might be a car practicing at ten o'clock in the morning and no car practicing again until three in the afternoon, so that in between that time we made no attempt to keep people off the track." The drivers knew the rule and were not supposed to take their vehicles out on the track until the people were cleared from the track area, and usually either he (the witness) or some other member of the corporation, or its employes or police engaged to police the area, kept the cars off the track when people were there. People were not invited to come to the track on Sundays to watch practice sessions because they did not have practice sessions on Sundays. Drivers and car owners had been told that they could not practice on Sundays which were not race days. The witness was at the track on the morning of July 9, 1950, and left instructions with Larry Shute, a mechanic employed by the defendant who also acted as a race official, not to permit any cars on the track that day. The witness knew nothing of the practice session held on that day until after the accident.

The witness Walters testified that he and others had used the track for practicing on a Sunday prior to July 9, 1950.

The plaintiff testified that she had not been invited by advertising or otherwise to go to the track on the day in question; that she was invited by Mr. Hendricks, and she believed that he had permission and that he could bring anyone he liked, though she did not know this to be a fact.

There was no ticket taker at the track when they arrived, the gates were open, and they walked in.

■ We are of the opinion that the court did not err in entering judgment of nonsuit. It is perhaps arguable that plaintiff, as a member of the public, was an invitee of the defendant while she was in the grandstand. We express no opinion on that question. But there is no evidence that the invitation, if there was one, extended to the area occupied by the race track. The public were invited to watch practice sessions only on days when practice sessions were permitted, and the evidence is that they were not permitted on Sundays on which there were no races. Drivers and car owners were so advised. On the day of the accident specific instructions in this regard had been given by the president of the corporation to the employe of the defendant in attendance at the track. There is actually no evidence that Hendricks got permission from the defendant to try out his car at the track on July 9, 1950. If he did get such permission it was not from Ryan, the president of the corporation, and was given in violation of his orders. Nor is there evidence that Hendricks was authorized to invite his friends, certainly not to invite them to come down on the track, and especially to remain there while Hendricks' car was being driven around the track. The evidence shows that on days when practice sessions were authorized, and officials and employes of the corporation were there to police the area, spectators were permitted to come on the track after the practice session was concluded. Whether on those occasions they were invitees as to that part of the premises is a question not now involved. On the day with which we are here concerned the plaintiff and the others in the group were on the track with, at most, the acquiescence of the defendant, not by its invitation.

■ An invitation may be implied as well as ex-

pressed. *Briggs v. John Yeon Co.,* 168 Or 239, 243, 122 P2d 444; *Napier v. First Cong. Church,* 157 Or 110, 115, 70 P2d 43; 65 CJS 510, Negligence § 43 (3). If a person, although on the premises by invitation, goes to a place other than that covered by the invitation, he ceases to be an invitee. *Hansen v. Cohen,* 203 Or 157, 164, 276 P2d 391, 278 P2d 989; *Napier v. First Cong. Church,* supra. "An invitation is implied where the entry on, or use of, the premises is for a purpose which is, or is supposed to be, beneficial to the owner or occupant, or where the entry or use of the premises is in the mutual interest or for the mutual benefit of the owner or occupant and the person who comes thereon * * *." 65 CJS 511, Negligence § 43 (3) b; *Briggs v. John Yeon Co.,* supra at 242. The evidence, perhaps, warrants an inference that it may have been of some benefit to the defendant to have the plaintiff come to its race track to watch a practice session from the grandstand—the normal place for spectators; but we think that this cannot justly be said of the plaintiff when she left the grandstand and took a place on the race track and exposed herself to danger while she watched her friend's car being driven around the track. She then became a mere licensee, and as such the defendant owed her no duty of reasonable care, but only to avoid injuring her by some form of willful or wanton wrong or active negligence. *McHenry v. Howells,* 201 Or 697, 702-703, 272 P2d 210; *Napier v. First Cong. Church,* supra at 113. No such conduct of the defendant is either alleged or proved.

In view of this conclusion it is unnecessary to express an opinion as to whether this case is governed by *Hunt v. Portland Baseball Club,* 207 Or 337, 296 P2d 495, in which we held that a spectator at a baseball game in an unscreened portion of the grandstand

could not recover damages from the ball club for an injury received when he was struck by a foul ball, for the reason, among others, that he had voluntarily exposed himself to a known and appreciated danger.

The judgment is affirmed.