347 P.2d 327

Harold L. BOGART, Plaintiff-Appellant,

v.

Evelyn HESTER, Administratrix of the Estate of E. L. Hester, deceased, d/b/a Hester Mud Company and American Tank and Steel Company and James C. Engelbrecht, Defendants-Appellees.

No. 6439.

Supreme Court of New Mexico.

Nov. 25, 1959.

Rehearing Denied Dec. 23, 1959.

McAtee, Toulouse & Marchiondo, B. J. Stephens, Albuquerque, for appellant.

Brown & Wood, Farmington, for American Tank & Steel and Engelbrecht.

Seth, Montgomery, Federici & Andrews, Santa Fe, for Hester Mud Co.

JOHN R. BRAND, District Judge.

Plaintiff Harold L. (Louie) Bogart lived at Farmington about a block from the premises of Hester Mud Company, for whom he had formerly worked. His uncle, Carl Rucker, was employed by Hester Mud Company as a foreman, and lived on the

Mud Company yard. On the day of the accident, Bogart, who often visited his uncle, to the knowledge of Mr. Hester, went to the mud yard to borrow a tool from his uncle with which to repair an air-conditioner at his house. While there talking to the uncle, the defendant James Engelbrecht, a truck driver for defendant American Tank & Steel Company, entered the shop where they were and asked Rucker if he would help him load the tank, for which he had been sent, onto the truck. The tank belonged to Hester and was to be returned to American Tank to have skids attached to it. Rucker, agreeing to assist in the loading, went with Engelbrecht, and plaintiff and several others followed and sat down near the tank to watch the loading operation. Among the spectators was one Lobato, another of Hester's employees.

Sometime previously, Rucker had built a chain hoist to be used in the mud yard for lifting heavy objects, and it had been used in loading tanks such as was to be done in this case. The hoist was hung on rollers and was not level, being lower at one end, so that when an object was lifted it would move or travel to the low end unless prevented.

Rucker prepared to lift the tank by placing a steel crossarm attached to the hoist through the manhole in the top of the tank and then climbed onto an adjacent tank and commenced raising the one to be loaded.

Engelbrecht started his truck motor and prepared to back under the tank when it was lifted high enough to allow his truck to be placed beneath it. Before the tank was in proper position, however, it started to travel to the low end of the hoist and toward Rucker. He, seeing that unless stopped it would move so close to him as to prevent him from controlling it, cried, "Louie, give me a hand!", whereupon plaintiff (Louie) sprang to help. He grasped the tank to steady it, and at that instant the crossarm by which it was suspended disengaged, the tank dropped and pinned plaintiff against a nearby parked truck, causing him bodily injuries.

Plaintiff brought this action for damages claiming that he was invited onto the premises; that Rucker, in the scope of his employment for Hester, requested his assistance in loading the tank; that Engelbrecht also requested his assistance, and that he volunteered to assist; that Hester Mud Company was negligent in the method by which the tank was rigged to be hoisted, and that its employee Rucker negligently operated the hoist; that Engelbrecht was negligent in backing his truck into the tank and causing it to fall while it was being hoisted, and that American Tank is liable for his negligence. Plaintiff later filed an affidavit in which he asserted that he knew that the hoist being used had been faultily installed, in that one end was lower than the other; and that the bar to be inserted in the opening in the tank was too short for such pur-

pose, and was inadequate. Bogart had previously used this hoist in loading tanks while working for Hester.

In separate answers the defendants denied their negligence, claimed contributory negligence, assumption of risk, and status of plaintiff as a trespasser. The depositions of plaintiff Bogart, his uncle Rucker and the truck driver Engelbrecht were taken, and defendants then filed motions for summary judgment, asserting that at the time of the injury plaintiff was on the mud company premises as a trespasser or bare licensee and, as such, the only duty owed to him by defendants was that of not wilfully or wantonly causing him injury; that the amended complaint did not allege any wilful or wanton acts of negligence.

The court granted summary judgment and dismissed the complaint, from which order this appeal was taken.

■ That summary judgment was properly resorted to is evident, since the depositions and pleadings raise no issuable question of fact material to a determination of the controversy. It is not clear what caused the tank to become disengaged from the bar with which it was being lifted, and this could have been caused either by the bar being too short, the hoist being unlevel, the carelessness of Rucker in operating the hoist, the truck bumping the tank while it was suspended, or a combination of these factors. It is conceivable also that it was caused by plaintiff's action in halting its movement suddenly. It may be assumed, however, for our purpose that either one or more or all the defendants were guilty of negligence which caused the injury, and that plaintiff was free of contributory negligence at the time of the accident. It may be conceded that plaintiff's status was that of "licensee" instead of trespasser.

■ What then are the undisputed facts which led to plaintiff's injury? He was watching the attempt to load the tank on the truck. He had no interest in the operation or the business at hand. He was a mere spectator. Suddenly his uncle requests his assistance, although there was a workman of Hester's also watching the work, and without hesitation he hastens to assist and is injured while in the act of helping his uncle control the moving tank. Whether he be called trespasser, licensee or invitee becomes of no consequence because his status for the purpose of our inquiry was that of "volunteer". The fact that he was asked (invited) by Rucker to help does not alter the situation. Rucker had no authority, express or implied, to put him to work, or to invite his assistance so as to make him a temporary employee. No emergency existed (and none is claimed) which could have given him authority to do so.

Bernhardt v. American Ry. Exp. Co., 218 App.Div. 195, 218 N.Y.S. 123, 125.

"We have, then, the simple question of the liability of a master for the act of a servant to one assisting the latter by unauthorized invitation, where the injury occurred during the performance of a detail of the work. *There seems to be little, if any, distinction between the nature of the duty owed to a person assisting by invitation and that owed to a pure volunteer.* The plaintiff, under the circumstances here, cannot place himself in a better legal position than the servant with whom he works. Langan v. Tyler, [2 Cir.] 114 F. 716, 718, 51 C.C.A. 503. The master is no more liable to him for the servant's negligence than he would be to the servant for the plaintiff's negligence. The defendant had no knowledge of the situation which arose, and could not well have anticipated what happened. The servant, by invitation or by acceptance of volunteered assistance, could impose no new or greater obligation on the master than that which the master owed to him. Nor could the invitee or volunteer create a new or greater liability by his act. The authorities sustain the principle of nonliability under such circumstances." (Emphasis ours.)

Plaintiff (appellant) urges reversal under only one point, in this language:

"The Court erred in granting summary judgment in that the evidence taken in the light most favorable to appellant shows that appellees were actively negligent resulting in injury to appellant at which time appellees owed appellant a duty to use ordinary and reasonable care for his protection.

"A. Appellant was not a trespasser at time of injury.

"B. Appellant was an invitee at time of injury.

"C. Regardless of his status as licensee or invitee at time of injury, appellees owed appellant the duty of reasonable care at that time."

We agree that appellant was not a trespasser, and feel that his status was that of licensee *prior to the time he volunteered to assist Rucker* in the work. Appellant says, however, that he became an "invitee" when Rucker requested his assistance, or invited him to help load the tank. That assertion has been answered—no invitation was given by Hester, the owner, but by Rucker, the foreman, who had no authority to do so.

As to the argument that defendants owed plaintiff the duty of reasonable care at the time, and were actively negligent, and hence liable, we find no support in the authorities for this proposition. There are some cases which draw a distinction between active and passive negligence in-

volving injuries suffered by licensees and trespassers, but a reading of them will disclose facts which differ from the instant matter. See Lucas v. Walker, 22 Cal.App. 296, 300, 134 P. 374, 376, where it was said:

"But if it be conceded that plaintiff was a mere licensee of defendant when he was hurt, it is still true that he was upon the premises and doing the work in question with the knowledge and consent of defendant. * * * A licensee under such circumstances is entitled to recover for any injury to himself, in the absence of contributory negligence upon his part, resulting from the active negligence of the licensor, and such licensor is responsible in damages for any overt act of negligence, though the same be neither willful nor wanton."

Other California cases cited on this point are Gay v. Cadwallader-Gibson Co., 34 Cal. App.2d 566, 93 P.2d 1051; Boucher v. American Bridge Co., 1950, 95 Cal.App.2d 659, 213 P.2d 537; and Newman v. Fox West Coast Theatres, 1948, 86 Cal.App.2d 428, 194 P.2d 706.

██ ██ One can be held liable for negligence only where he has failed to observe that standard which the law requires of him in the performance of a duty owed by him to the injured person. Generally no one is bound to guard against or take measures to avert that which he would not reasonably anticipate as likely to happen. Could any of the defendants have reasonably anticipated that an onlooker, whose presence at the place could not have been expected, would interest himself in the loading of the tank and take it upon himself to render assistance?

In Chavez v. Torlina, 15 N.M. 53, 99 P. 690, it was held that an owner of property is not liable to a trespasser or one who is on his property by mere permission or sufferance, for the negligence of himself or his agents; that a bare licensee goes upon premises at his own risk, must take them as he finds them, and accepts the permission thus granted with its concomitant conditions and perils; that as to a bare licensee, the only obligation resting upon the owner would be to refrain from any wanton or willful act producing injury.

In Snider v. Town of Silver City, 56 N. M. 603, 247 P.2d 178, this doctrine was reaffirmed. In an action brought against the defendant Town for property damage sustained in a gas explosion, it was held:

"Where owners of auto cabins had built them wholly on land belonging to a town, that is in the street, the owners were trespassers or licensees at best, and town was liable for damages from explosion in cabins, resulting from town's power ditchdigger's snagging of gas pipe, *only if its employees were guilty of wanton or wilful negligence*." (Emphasis ours.)

Kelly v. Tyra, 103 Minn. 176, 114 N.W. 750, 752, 115 N.W. 636, 17 L.R.A.,N.S., 334, defines a volunteer as follows:

"A volunteer is one who intrudes himself into matters which do not concern him, or does or undertakes to do something which he is not legally nor morally bound to do, and which is not in pursuance or protection of any interest. * * * To one who is a volunteer, properly speaking, even if assisting in the master's work at the request of a servant, no affirmative duty to exercise care is due originally, but only after knowledge of peril."

And, further, in Diefenbach v. Great Atlantic & Pacific Tea Co., 280 Mich. 507, 273 N.W. 783, in this manner:

"Plaintiff, though an 'invitee' when he entered the store with intent to make a purchase, became a mere 'volunteer' when he aided clerk in killing a rat and received blow of knife which clerk aimed at rat, so as to preclude recovery from store owner for injuries, in absence of showing that clerk's action was willful or wanton."

To the same effect are:

Kentucky Lumber Co. v. Nicholson, 157 Ky. 812, 164 S.W. 84, 86, 51 L.R.A.,N.S., 1213. "Employers of labor, except in cases of emergency, have the right to know whom they will be called upon to protect in the relation of servant, and when this relation begins; therefore when a third party undertakes, as an accommodation, or out of curiosity, to render some assistance to an employé, who has no authority to engage or consent to his services, he assumes the risk of any accident that may happen due to the ignorance or even carelessness, of the employé."

Callaham v. Carlson, 85 Ga.App. 4, 67 S.E.2d 726, 734. "One who, without any employment whatever, but at the request of a servant who has no authority [at the time or for such purpose] to employ other servants, voluntarily undertakes to perform service for a master, is a mere volunteer, and the master does not owe him any duty, except not to injure him wilfully * * *." (Material in brackets added.)

38 Am.Jur. 782, § 120, Negligence. "Persons who enter the premises of an employer merely for the purpose of visiting or interviewing an employee on business having no connection with that of the employer, * * * are at best mere licensees to whom the employer owes no duty except to refrain from exposing them to peril by active negligence and from injuring them wilfully or wantonly."

38 Am.Jur. 845, § 171, Negligence. "One cannot deliberately incur an obvious risk of personal injury, especially when preventive measures are at

hand, and then hold the author of the danger for the ensuing injury. Thus, a person upon the property of another, who deliberately chooses to expose himself to danger of a patent character in the condition of the premises, which he could easily avoid with the exercise of care, may not hold the landowner liable for any resulting injuries, whatever may be the nature of his relationship to the landowner."

In Henry Quellmalz Lumber & Mfg. Co. v. Hays, 173 Ark. 43, 291 S.W. 982, 983, the plaintiff went to the defendant's cotton gin to visit his uncle who was an employee of the defendant and who was operating one of the gin machines. The uncle asked the plaintiff to help unchoke the gin stand and while doing so, he was injured. The court said:

"It was wholly immaterial whether or not the assistance of the plaintiff would tend to facilitate the business of the defendant or to make it easier for the ginner to unchoke the gin stand. Such facts would not give the ginner authority to employ additional help. *There must be a sudden or unexpected emergency which would imperil the ginner or threaten harm to the gin stand in order to give implied authority to the ginner to employ temporary assistance.* The undisputed evidence shows that there was no sudden or unexpected emergency, which would give the ginner the implied authority to employ a temporary assistant to help him unchoke the gin stand * * * *he might have called to his assistance the other ginner who was not more than three feet from him or another employee who was working nearby. The servant who had general control and management of the gin had not directed him to speed up his work.* On the other hand, the undisputed evidence shows that there was no necessity to do that." (Emphasis ours.)

It also seems clear that plaintiff assumed the risk and is for such reason barred from recovery. He had previously worked for this employer at these premises. He was not only acquainted with the method used there in loading tanks, he knew that the homemade hoist which was being used at the time had been faultily installed and that an object lifted by it would tend to "travel", and that the crossbar inserted in the tank opening was too short and apt to become disengaged. Yet he contends that these very defects in the apparatus contributed to the accident which injured him. Instead of the defendants exposing him to peril, as is claimed, he deliberately exposed himself to the danger and without cause.

The judgment dismissing the action was correct, and is affirmed, and,

It is so ordered.

McGHEE, COMPTON, and CAR-MODY, JJ., concur.

LUJAN, C. J., dissenting.

LUJAN, Chief Justice (dissenting).

Appellees' motion for summary judgment was granted by the trial court on the ground that at the time of the injury appellant was upon the premises as a trespasser or bare licensee and, as such, the only duty owed to him was not to wilfully or wantonly injure him, and that there was no allegation of such wilful or wanton acts.

The case was squarely presented to this court on the issue of the duty owed by a landowner or occupier to a licensee or trespasser in the conduct of active operations on the premises.

Rather than answering what I feel is the determinative question in this case, the majority opinion states that since appellant was a "volunteer", his status as a trespasser, licensee or invitee is of no consequence.

The majority of this court admit, as they must, that appellant was a licensee prior to the time he came to the assistance of foreman Rucker at the latter's request. Once he came to Rucker's aid, the majority say he lost his status as a licensee, and indeed even as a trespasser, purportedly because his act of giving aid constituted an excess of his permission to enter the premises. Yet the courts have historically classified a person on the premises of another as a trespasser, licensee or invitee in order to determine the standard of care owed by the land occupier to the particular person.

Why should a person lose his status as a licensee simply because in response to a request by one acting for the land occupier he comes to such person's aid? I do not feel that he should.

In Davis v. Silverwood, 116 Cal.App.2d 39, 253 P.2d 83, a truck driver had completed the purpose for which he had been on defendant's premises as an invitee and had started to return to his employer's premises when he voluntarily returned to the defendant's premises to assist the defendant's employee in fixing an elevator. The court held that at the time the driver gave such aid he was a licensee and that he was not entitled to recover for injuries received *since the record showed no active negligence on defendant's part*. Thus we see that this licensee did not lose his status when he "volunteered" to assist the defendant's employee. See Coulombe v. Horne Coal Co., 275 Mass. 226, 175 N.E. 631; Armstrong v. Bowman, 21 Tenn.App. 673, 115 S.W.2d 229.

It seems patent to me that the decision in this case should turn upon the scope of the duty owed by a landowner or occupier to a licensee.

Appellant does not challenge the oft-repeated general rule that an occupier of land is under no duty to inspect his property

in order to make the premises safe for the reception of a licensee. Prosser on Torts p. 625 (1941); 2 Harper and James, The Law of Torts § 27.8 (1956). He urges, however, that in conducting active operations on the premises an occupier has a duty to exercise reasonable care to keep from injuring a licensee whose presence is known or reasonably should be known, citing in particular the annotations in 49 A.L.R. 778 and 156 A.L.R. 1226.

The ever present trend toward greater protection of individuals and thus wider accident liability could hardly have been expected to leave the land occupier's citadel untouched. Nor has it. Such concepts as the "attractive nuisance" doctrine, the "dangerous activity" rule, and the "constant trespasser in a limited area" rule have stripped away much of the land occupier's immunity. See Smith v. Boston & M. R. R., 87 N.H. 246, 177 A. 729; Barry v. New York Cent. & H. R. R. Co., 92 N.Y. 289, 44 Am.Rep. 377.

As will be seen later, a majority of jurisdictions which have ruled on the question now hold that the duty of land occupier to a licensee, *insofar as active operations are concerned,* is the same duty which society generally places upon all of its members, namely, to exercise reasonable care under the circumstances. 2 Harper and James, The Law of Torts § 27.10 (1956). In Prosser on Torts p. 630 (1941) this principle is stated thusly:

"Some courts have gone so far as to say that there is no duty to a licensee other than to refrain from inflicting wilful or wanton injury upon him. As in the case of trespassers, however, an increasing regard for human safety has led to a retreat from his position. *It is now generally held that as to any active operations which the occupier carries on, there is an obligation to exercise reasonable care for the protection of a licensee."* (Emphasis added.)

To hold that the duty which a land occupier owes to a licensee varies according to whether the injury results from a defective condition of the premises, or from an affirmative act of negligence arising in the course of active operations conducted on such premises by the occupier or by one acting in his behalf or for his benefit seems eminently reasonable. While society does not yet require the land occupier to take affirmative steps to make the condition of the premises safe for a licensee, it seems justifiable to require him to refrain from affirmative acts which endanger such licensee. Such a doctrine does not impose an unreasonable burden upon the use of land. The duty not to be negligent in conducting active operations is only a duty to exercise reasonable care. To confer upon an occupier of land a special privilege to be careless in active operations is quite out of keeping with the development of accident law generally.

Appellees imply that such a rule is unwarranted since in a particular case the line of demarcation between active negligence and passive negligence may be shadowy and indistinct. Yet the distinction between misfeasance (active negligence) and non-feasance (passive negligence) is recurrently drawn in the field of tort law. Restatement, Torts (§§ 329–350 (1934) (throughout these sections a distinction is made between condition of the premises and active operations) ; see McNiece and Thornton, Affirmative Duties in Tort, 58 Yale L.J. 1272 (1949).

My research discloses that judicial statements to the effect that an occupier of land owes a licensee no greater duty than to refrain from wilfully or wantonly injuring him are too broad. Most of such statements appear in cases which were dealing with a condition of the premises as opposed to active operations thereon. As the court stated in Oettinger v. Stewart, 24 Cal.2d 133, 148 P.2d 19, 22, 156 A.L.R. 1221:

> " * * * it is now generally held that in cases involving injury resulting from active conduct, as distinguished from condition of the premises, the landowner or possessor may be liable for failure to exercise ordinary care toward a licensee whose presence on the land is known or should reasonably be known to the owner or possessor."

In a similar vein is the following statement by the North Carolina court · in the case of Brigman v. Fiske-Carter Construction Co., 192 N.C. 791, 136 S.E. 125, 128, 49 A.L.R. 773:

> "The rule established by the authorities in this and other jurisdictions is that, while the owner of the premises is not liable to a  *  *  *  bare or permissive-licensee * * * unless the injury results from the willful and wanton negligence of the owner, yet the rule is usually restricted to injuries resulting from existent conditions upon the premises, or what is termed passive negligence. *Upon the other hand, the owner is liable for any injuries brought about and caused by active negligence in the management or operation of the business or control of the premises which would increase the hazard to the licensee."* (Emphasis added.)

The active negligence-passive negligence distinction was stated quite succinctly by the Pennsylvania court in Potter Title & Trust Co. v. Young, 367 Pa. 239, 80 A.2d 76, 78, as follows:

> "The legal status of Jones was that of a gratuitous licensee,—that is, a person permitted to enter upon the land of another solely for his own purposes, in this case in search of a job. What is the duty of the possessor of land to such a licensee? Although the distinction may not be entirely clear under every given set. of circumstances, the

authorities uniformly differentiate in that connection between what, for want apparently of a better terminology, they designate as 'passive' negligence and 'active' negligence. Generally speaking, the term 'passive negligence' denotes negligence which permits defects, obstacles or pitfalls to exist upon the premises, in other words, negligence which causes dangers arising from the physical condition of the land itself. 'Active negligence', on the other hand, is negligence occurring in connection with activities conducted on the premises, as, for example, negligence in the operation of machinery or of moving vehicles whereby a person lawfully upon the premises is injured."

Statements and holdings to the same effect from at least twenty-three jurisdictions are legion. The following are a representative sample from the hundreds of such cases:

Polston v. S. S. Kresge Co., 324 Mich. 575, 37 N.W.2d 638; Bennett v. Boney, 367 Pa. 249, 80 A.2d 81; Babcock & Wilcox Co. v. Nolton, 58 Nev. 133, 71 P.2d 1051; Brigman v. Fiske-Carter Construction Co., 192 N.C. 791, 136 S.E. 125; Yamauchi v. O'Neill, 38 Cal.App.2d 703, 102 P.2d 365; Krause v. Watson Bros. Transp. Co., 119 Colo. 73, 200 P.2d 387; Schmidt v. Michigan Coal & Mining Co., 159 Mich. 308, 123 N.W. 1122; Warner v. Lieberman, 7 Cir., 253 F.2d 99; Petrol Corp. v. Curtis, 190 Md. 652, 59 A.2d 329; Taylor v. Baton Rouge Sash & Door Works, Inc., La. App., 68 So.2d 159; Twine v. Norris Grain Co., 241 Mo.App. 7, 226 S.W.2d 415; Mayer v. Temple Properties, 307 N.Y. 559, 122 N.E.2d 909; Brady v. Chicago & N. W. R. Co., 265 Wis. 618, 62 N.W.2d 415; Banks v. Watts, 75 Ga. App. 769, 44 S.E.2d 510; Roadman v. C. E. Johnson Motor Sales, 210 Minn. 59, 297 N.W. 166; Radio Cab v. Houser, 76 U.S.App.D.C. 35, 128 F.2d 604; Hill v. Baltimore & O. R. Co., 7 Cir., 153 F.2d 91; Ryan v. Chicago & N. W. Ry. Co., 315 Ill.App. 65, 42 N.E.2d 128; Chekanski v. Texas & New Orleans Railroad Co., Tex.Civ.App., 306 S.W.2d 935; Grahn v. Northwest Sport, Inc., 210 Or. 249, 310 P.2d 306; Gay v. Cadwallader-Gibson Co., Inc., 34 Cal.App. 2d 566, 93 P.2d 1051; Mathias v. Denver Union Terminal Ry. Co., 137 Colo. 224, 323 P.2d 624; Tesone v. Reiman, 117 Cal.App.2d 211, 255 P.2d 48; Ward v. Avery, 113 Conn. 394, 155 A. 502; Nelson v. F. W. Woolworth & Co., 211 Iowa 592, 231 N.W. 665; Louisville & N. R. Co. v. Page, 203 Ky. 755, 263 S. W. 20; Le Compte v. Wardell, Mont., 333 P.2d 1028; Eddy v. Oklahoma Hotel Building Co., 10 Cir., 228 F.2d 106.

In addition, some courts which do not make a distinction between injuries result-

ing from a condition of the premises and those resulting from active operations, and which may even purport to follow the "wilful-wanton" rule, actually reach the same result in a circuitous manner. They simply hold that to be actively negligent in the presence of a known trespasser or licensee amounts to wilfulness and wantonness. See Cox v. Terminal R. Ass'n of St. Louis, 331 Mo. 910, 55 S.W.2d 685; James, Tort Liability of Occupiers of Land, 63 Yale L.J. 144, 177 (1953); Prosser on Torts, note 95, p. 630 (1941); 2 Harper and James, The Law of Torts § 27.6 (1956); Bohlen, Fifty Years of Torts, 50 Harvard L.Rev. 725, 737.

Assuming the majority opinion is correct in holding that when a licensee or invitee volunteers aid to a land occupier or his employee upon request, he loses his licensee or invitee status, what category does he then fall in? For the purpose of determining the standard of care which the occupier owes to him he is classified as a trespasser. The following quotation from 38 Am.Jur., Negligence, p. 767, a text which the majority cite frequently, recognizes this principle:

"A licensee who exceeds the permission given him becomes a trespasser."

In 4 Thompson, Negligence, § 4680, written in 1904, the author recognizes that a person who volunteers to assist the servant of another without being employed to do so can recover for injuries received only if

a trespasser or "bare" licensee could recover. Marshall & E. T. Ry. Co. v. Sirman, Tex.Civ.App., 153 S.W. 401; Reaves v. Catawba Mfg. & Electric Power Co., 206 N.C. 523, 174 S.E. 413; Southern Ry. Co. v. Duke, 16 Ga.App. 673, 85 S.E. 974.

What then is the duty owed by a land occupier to a known trespasser in the conduct of active operations as distinguished from a condition of the premises? The majority rule in this country holds land occupiers liable for injuries caused by active negligence to known trespassers. Prosser on Torts, p. 436, (1955 Ed.) states this enlightened principle as follows:

"The great majority have discarded 'wilful or wanton' entirely as a limitation, and have said outright that once the presence of the trespasser is discovered, or the owner is otherwise notified of his danger, there is a duty to use ordinary care to avoid injuring him, as in the case of any other human being. The defendant is required to govern his *active* conduct, such as running a train, conducting a circus, or operating an elevator, with the caution of a reasonable man for the trespasser's safety." (Emphasis added)

In 2 Harper and James, The Law of Torts, p. 1464, (1956), the authors state that under one form or another, the above rule has been adopted by a vast majority of American jurisdictions. Peaslee, Duty to

Seen Trespassers, 27 Harv.L.Rev. 403, (1914); Eldredge, Tort Liability to Trespassers, 12 Temple L.Q. 32 (1937); Herrick v. Wixom, 121 Mich. 384, 80 N.W. 117, 81 N.W. 333; Krause v. Watson Bros. Transp. Co., 119 Colo. 73, 200 P.2d 387. Ryan v. State, 13 Misc.2d 282, 177 N.Y.S.2d 922; Friedman's Estate v. Texas & Pac. Ry. Co., 209 La. 540, 25 So.2d 88, 163 A.L.R. 1228.

So we see that even if the appellant was transformed into a trespasser when he came to Rucker's aid, the majority opinion is still incorrect.

Most of the reported cases which either support, or appear at first glance to support, the position taken by the majority of this court have turned on principles of law governing master and servant. A person, by merely volunteering his services to another, or by assisting the servants of another when such servants have no authority to employ assistance, cannot establish the relation of master and servant, and thereby create liability for injuries *under the rules of law governing master and servant.* Houston, E. & W. T. Ry. Co. v. Jackman, Tex.Civ.App., 217 S.W. 410.

But the legal question in this case does not involve master-servant law. The issue is the duty owed by a landowner or occupier to a licensee, or perhaps to a known trespasser, in the conduct of active operations on the premises. In this regard the following statement by the court in Daugherty v. Spuck Iron & Foundry Co., Mo.App., 175 S.W.2d 45, 55, seems quite appropriate:

"* * * while a volunteer may not recover on the basis of being a servant, 'he yet may be entitled to the exercise of that degree of care owed to persons rightfully on the premises of the employer and may found his right of recovery on the general principles of negligence.'" Rook v. Schultz, 100 Or. 482, 198 P. 234.

The conclusion reached by the majority that appellant assumed the risk *as a matter of law* is not only erroneous, it is quite superfluous under the majority's rationale of this case. If, as held by the majority, appellant is precluded from recovery regardless of whether appellees were negligent, the defense of assumption of risk has no bearing on the case whatsoever.

The majority of the court have purported to ground their decision on the "volunteer" aspect and have stated that appellant's status as a trespasser, licensee or invitee is of "no consequence". Under such circumstances, I strongly feel that neither Chavez v. Torlina, 15 N.M. 53, 99 P. 690, nor Snider v. Town of Silver City, 56 N.M. 603, 247 P.2d 178, should be cited with approval. Neither case involved any so-called "volunteer" question.

Being convinced that the majority opinion is retrogressive, wrong in law, and wrong in principle, I herewith register an emphatic dissent.